(27 Misc. Rep. 727.)

PEOPLE ex rel. SAGAZEI v. SAGAZEI.

(Court of General Sessions, New York County. June, 1899.)

1. HUSBAND AND WIFE—ABANDONMENT—JURISDICTION.

A conviction under a charge of abandonment of family, obtained before a magistrate in Manhattan borough while the same charge was pending before a magistrate in Brooklyn borough, is invalid for want of jurisdiction, under Laws 1895, c. 601, § 9, providing that no charge having been preferred before one magistrate shall be sent before another.

2. SAME—ANOTHER PROSECUTION PENDING.

Under Greater New York Charter, § 1399, dividing the city into districts, establishing a magistrate in each district, and providing that these magistrates and charges before them should be governed by section 9, c. 601, amended by chapter 908, Laws 1895, which provides that charges brought before a magistrate shall not be sent before another, a charge of abandonment brought in Brooklyn borough is a bar during its pendency to a prosecution under the same charge brought in New York.

3. SAME—RESIDENCE.

Where the relator in a charge of abandonment of family shows by her own testimony that she was not resident within the jurisdiction of the court when the abandonment was alleged to have taken place, the court is without jurisdiction to try the charge.

4. SAME—SECURITY FOR SUPPORT.

Where defendant has been convicted of abandonment, the giving of a bond for the support of his family does not preclude him from appeal, unless the bond is in the form provided by law.

5. SAME—BOND TO PROVIDE FOR FAMILY.

Under Greater New York Charter, § 686, providing that a man who abandons his wife or children may be compelled to give bond that he will

pay for the support of the wife or children, or either of them, a bond to
provide for a "family" is invalid where a wife only has been abandoned.

6. SAME—BOND TO COMMISSIONER OF CHARITIES OF BOROUGH.
    Under Greater New York Charter, § 686, providing that, when a person
    abandons his wife or children, he shall give a bond for their support to
    the commissioners of public charities for that borough, a bond to the com-
    missioners of public charities of the city and county of New York is in-
    valid, as these officers no longer exist.

Appeal from city magistrate.

On relation of Charlotte Sagazei, William Sagazei was convicted
of abandonment, and appeals.   Reversed.

Hirsh & Rasquin (John M. Cahill, of counsel), for appellant.

Adrian T. Kiernan, Asst. Corp. Counsel (Herman Stiefel, of coun-
sel), for respondent.

GOFF, R.   The defendant was adjudged a disorderly person, for
having abandoned "his family" in the city of New York, and was or-
dered to pay to "the commissioners of public charities" $10 per week
for the support of "his family."   From the judgment and order he
appeals to this court.

The following facts and proceedings are set forth in the return of
the city magistrate:   Charlotte Sagazei, the complainant, was mar-
ried to William Sagazei, the defendant, in 1863.   In 1886, while the
pair resided in Brooklyn, county of Kings, the wife, with her hus-
band's consent, went to Germany, and remained there 10 years.
The husband continued to reside in Brooklyn, and has so resided
there for the past 25 years.   In 1896 the wife returned from Ger-
many, and took up her residence for a time in Astoria, Queens county.
On October 24, 1898, she made sworn complaint, before a city mag-
istrate in the borough of Brooklyn, "that on the 26th day of August,
1898, at the borough of Brooklyn, defendant actually abandoned his
wife."   A warrant was issued for the arrest of the defendant, and
on October 26th he was arrested in the borough of Brooklyn, ar-
raigned, pleaded not guilty, and was paroled for examination, which,
after several adjournments, was fixed for the 14th day of December,
1898.   After this complaint had been made, and while the case in the
borough of Brooklyn was pending, the complainant went before a
city magistrate in the borough of Manhattan on the 25th of No-
vember, and made sworn complaint "that the defendant had aban-
doned her in said city," and on this a warrant was issued, to be exe-
cuted in the borough of Brooklyn.   On this warrant the defendant
was arrested on the 28th of November, and gave bail for appearance
for examination, which was adjourned to the 6th of December.   On
that day, before the city magistrate in the borough of Manhattan,
the complainant made sworn deposition, in the presence of the de-
fendant, "that she was his wife; that she was the mother of no chil-
dren; that he had abandoned her in New York on or about the 15th
of May, 1891; and that he had not contributed to her support, or the
support of his said children, since that time."   Examination was
then had before the city magistrate in the borough of Manhattan, in
which the complainant testified that "two months previously she had
preferred a charge of abandonment against the defendant in the bor-

ough of Brooklyn, and that the charge was still pending, and that the judge there had adjourned it until the 14th of December." At the close of the examination, the city magistrate adjudged the defendant to be a disorderly character. Two questions are presented on this appeal,—the first, by the appellant's contention that the magistrate did not have jurisdiction of the proceeding; and the second, by the respondent's contention that the appellant, having given the bond required by law, complied with the judgment, and is therefore precluded from appeal. Did the magistrate have jurisdiction of the proceeding? In 1895 the office of police justice in the city of New York was abolished, and the office of city magistrate was created instead. By section 11 of chapter 601 of the Laws of that year, it was declared that "all provisions of law relating to or defining the powers, jurisdiction, * * * of police justices and the courts held by them * * *. which shall be in force on the thirtieth of June, eighteen hundred and ninety-five, in so far as the same are consistent with this act, shall thereafter apply to and control the city magistrates * * * and the courts held by them." Section 9 of the same act provides that "no charge, complaint or person brought before one city magistrate shall be sent before another, except for adequate cause, to be fully and at once entered upon the records kept by such police clerks, and signed by the magistrates." In the city of New York prior to 1898 a complaint made or a person brought before one city magistrate could not be sent before another, except for adequate cause, which was to be fully set forth upon the record, and signed by the magistrate. In substance and meaning, this is a statutory declaration of the general rule that, where jurisdiction of the person and of the subject-matter is once acquired, it is a bar to other or subsequent prosecutions for the same cause while the original prosecution or proceeding is pending. The statute contemplates that, when once a person is brought before a magistrate on a complaint or charge, he shall not be brought before another magistrate on the same complaint or charge, except that, for adequate cause, to be stated as part of the record, the magistrate to whom complaint was first made may send it to another magistrate. The mischief which might arise from a practice of one magistrate arbitrarily sending to another magistrate complaints or persons brought before him would be intensified, if a complainant, after setting the machinery of the law in motion before a magistrate, were permitted to go from one magistrate to another until he found one whom he thought suited his purposes or convenience. Such a practice would be fraught with grave evils in the administration of criminal justice, and would subject the accused to harassment and oppression. Every person charged with a violation of law is entitled, as matter of right, to be apprised of the definite charge against him, as well as to the certainty that he will have to answer but in one tribunal, and suffer but one penalty for his offense. It is clear, therefore, that, before the charter of the Greater New York went into effect, a complaint made before one magistrate precluded the complainant from going before another magistrate with a complaint for the same cause while the former proceeding was pending. Has the law been changed by the

charter? Section 1390 of the charter provides that, "for the purposes of administration of criminal justice, the city of New York * * * is divided into two divisions, as follows: The First division embraces the boroughs of the Bronx and Manhattan, the Second division embraces the boroughs of Brooklyn, Queens and Richmond." Section 1392 continues in office the city magistrates appointed under chapter 601 of the Laws of 1895, with the same powers, jurisdiction, duties, etc., within the First division, as they had by law on the 31st of December, 1897. Section 1394 provides that the police justices of the former city of Brooklyn shall continue in office, but shall be known as city magistrates of the Second division of the city of New York, with the powers and duties prescribed for city magistrates, and no other. Section 1399 provides that "the provisions of section nine, chapter six hundred and one, amended by chapter nine hundred and eight of the Laws of Eighteen Hundred and Ninety-Five, shall apply to all of said city magistrates, and to all charges and complaints brought before any of the said magistrates."

From these provisions it will be observed that the charter designs a uniform administration of criminal justice in all the city magistrates' courts of the different divisions and boroughs constituting the city, and that the statutory prohibition against complaints or persons brought before one magistrate being sent before another, and which was in force as to a part of the present city before January, 1898, is now of general application. When on the 6th of December the complainant made complaint or deposition before the magistrate in the borough of Manhattan that the defendant "had abandoned her in said city and county on the 15th of May, 1891," and testified, on her examination, that the proceeding before the magistrate in Brooklyn was still pending, the magistrate in the borough of Manhattan did not acquire jurisdiction to adjudge the defendant a disorderly person, for two reasons: First, that the "said city and county" where the abandonment was alleged to have taken place could only mean (reference being had to the venue) "the city and county of New York" as they existed prior to 1898, and it was manifestly impossible that the abandonment could have taken place in the said city and county on the 15th of May, 1891, when, according to her own testimony, she was at that time residing in Germany, and therefore could not have been abandoned in New York; and, second, that there was a proceeding then pending and undetermined before a magistrate in the borough of Brooklyn for the same cause and between the same parties. The defendant's motion for a dismissal should have been granted.

Was the defendant, by going on a bond, precluded thereby from appeal? Even if this contention be acceded to as valid, it yet remains necessary to show that the bond that was given was the bond required by law. The bond does not form part of the return, but the order of the magistrate directing the bond to be given does, and, of course, the bond must follow the order; otherwise, it has no legal force. It is provided by section 685 of the charter that "every person * * * who actually abandons his wife or children without adequate support * * * may be arrested upon a complaint,

* * * and brought before a city magistrate. * * * And if thereupon it shall appear ⁂ ⁂ ⁂ that he is guilty of the charge, the magistrate shall make an order specifying a reasonable sum of money to be paid weekly for the space of one year thereafter by such defendant to the commissioner of public charities for the borough in which such proceedings is had, for the support of the wife or children,"—and, by section 686, that "any person convicted ⁂ ⁂ ⁂ shall, upon being served with such order, enter into a bond to the people of the state in such sum as the city magistrate shall direct, * ⁂ ⁂ that such person, ⁂ ⁂ ⁂ for the space of one year, shall pay such sum, for the support of the wife or children, or either or any of them, as has been ordered, as aforesaid, to the commissioner of the borough in which such proceeding is had." Under the charter, each commissioner of public charities shall exercise administrative jurisdiction in the borough or boroughs for which he has been designated (section 658), and shall keep account of all moneys received and expended by him, together with the sources of receipt and the purposes of expenditure (section 674). From these several sections of the statute, the intention of the law is clear that the order, and the bond given in pursuance thereof, must be for the support of the wife or children, and the payment of the money therefor to the commissioner of the borough in which the proceeding has been had. The magistrate has no power or jurisdiction to make an order or exact a bond in any other form or for any other purpose. The order is as follows:

"The said city magistrate therefore orders, as well for the indemnity and relief of the commissioners of public charities of the city and county of New York as for the support of the family of the said William Sagazei, that he shall and do pay, or cause to be paid, to the commissioners of public charities the sum of $10 weekly, and every week from the day of the date of this order, for and towards the support of his family."

The plain language of the statute is that a person who abandons his wife or children may be compelled to give a bond that he will pay for the support of "the wife or children, or either of them," such sum as may be directed "to the commissioner of the borough in which such proceeding is had." The evidence here.is that there are no children. The wife alone was abandoned, and the defendant is ordered to give a bond for the support of "his family." Since the word "family" is not mentioned in the statute, why its use in the bond? The statute defines the object of support to be the wife or children. The evidence limits the obligation to the wife. Is the word "family" a legal synonym for "wife," in the sense in which it is here used? In a general sense, the family may be said to consist of father, mother, and children; all the individuals who live under the control of another, including the servants of the family. Poor v. Insurance Co., 2 Fed. 432. "In common parlance, the family consists of those who live under the same roof with the paterfamilias; those who form his fireside." Rex v. Inhabitants of Darlington, 4 Term R. 797; Dodge v. Railroad Co., 154 Mass. 299, 28 N. E. 243. "For some purposes a husband and wife may be regarded as a family." Kitchell v. Burgwin, 21 Ill. 40; Regan v. Zeeb, 28 Ohio St. 483; Cox v. Stafford, 14

How. Prac. 519. The primary meaning of the word "family" is "children," and it must be so construed, unless the context shows that it was used in a different sense. Thus, in Spencer v. Spencer, 11 Paige, 159, the chancellor said:

"The expression, 'if he shall get married and have a family,' in its ordinary sense, in a will or settlement, means to get married and have issue of such marriage, and not merely to get married and have a family by becoming a housekeeper."

. So, in Dominick v. Sayre, 3 Sandf. 555, it was held that, under a power to give to any of the family of the testator, "family" meant "children." I have been unable to find any authority which holds that a wife abandoned by her husband constitutes a family. The statute neither says nor means family. The specific limitation of the husband's obligation to support his wife or children is made, and, where language in a statute is express and unequivocal, it must be followed, and in its stead there cannot be substituted words which are susceptible of a different meaning or construction. The order directs that a bond be given for payment to "the commissioners of public charities of the city and county of New York." Are there any officials answering this description who could maintain an action on the bond for a breach of its condition? Manifestly no. Such officials have ceased to exist, and in their stead has been instituted the office of commissioner of public charities of the borough in which the proceeding is had. To that official the order must direct the payment to be made. The condition of the bond is that the payment must be made to him, and "any suit, action or proceeding, brought or instituted upon any bond or recognizance, shall be brought and prosecuted by and in the name of the commissioner of the borough in which said bond or recognizance was given." Section 687. A bond required by that statute, to be a valid and subsisting obligation, must conform to its provisions. Compliance with the statute is essential to its validity, and, when it does not, it is as if no bond had been given. This bond for payment to the commissioners of public charities in the city and county of New York, for the support of a family, is not warranted or required by law, and therefore the defendant has not given a bond which would preclude him from being heard on appeal. Whether an abandonment was had, or where or when it took place, or that no appeal lies, where a bond has been given, are questions which should be passed upon only when the case presented is devoid of the errors which here require a reversal of the judgment.

Judgment reversed.