STATE OF MISSOURI, Respondent, v. W. R. SHUEY, Appellant.

St. Louis Court of Appeals, April 28, 1903.

Husband and Wife: ABANDONMENT: CRIMINAL PROSECUTION: PLACE OF OFFENSE. In a prosecution for abandonment of wife, where the evidence of both prosecutrix and defendant showed that the final separation, after which they had never lived together, took place in Idaho, the offense was one against the laws of Idaho, and not against the laws of Missouri.

Appeal from Newton Circuit Court.—*Hon. H. C. Pepper,* Judge.

REVERSED AND REMANDED.

*James H. Pratt* and *Horace Ruark* for appellant.

(1) "As the defendant never returned to his wife after the first charge was preferred, he can not be held to have again deserted her. Nor did his refusal to live with her or to furnish her the means to live on, constitute another crime. The essential act of abandonment

was lacking. The abandonment was committed when he first left her and could not be committed again until he had returned to her and resumed the conjugal relation." State v. Miller, 90 Mo. App. 131. (2) "Two elements go to make up the offense under the statute; desertion or abandonment and non-support; and unless both of these are shown, the prosecution must fail. This offense, too, must have been committed in the State of Missouri. The statute is designed to punish crimes committed here and not elsewhere." State v. Weber, 48 Mo. App. 500. The statute requires an actual abandonment. A constructive abandonment is not sufficient. State v. Brueining, 60 Mo. App. 51.

No briefs for respondent.

BLAND, P. J.—An information bottomed on section 1861, Revised Statutes 1899, charging the defendant with abandoning his wife without good cause, was filed before a justice of the peace in Newton county. From a conviction in the justice's court, defendant appealed to the circuit court, where on a trial *de novo* defendant was again convicted and sentenced to pay a fine. From this conviction he appealed to this court.

Defendant was a witness in his own behalf. In their testimony he and his wife agreed on the following facts: That they were married in Newton county, Missouri, May 14, 1901, and lived together on the farm of defendant's father in Newton county for a few weeks; that they then moved to Webb City, in Jasper county, and lived together there until some time in August, 1901; that they then went to Burke, Idaho. In regard to what took place after their arrival there, their evidence is different.

The wife testified that they lived in Burke about four weeks, and then her husband sent her to Spokane, Washington, telling her that she could work for her board and that he would save all he could out of his

wages; that a day or two after arriving at Spokane, she received a letter from her husband (not produced in evidence) telling her to come to Boise City, Idaho; that she went to Boise City and her husband was not there; that after remaining in Boise City until sometime in December, and having no means of her own, the authorities of that city furnished her transportation to her father's home in Newton county, Missouri, where she arrived about December 18, 1901.

She further testified that when she was sent to Spokane by her husband he furnished her $51.50 in money, went with her to the railroad depot, got a ticket for her, saw her on the train and kissed her good-bye; that she had $110 when she was married that she had saved out of her salary as a school teacher; that all of this money but $20 was used in purchasing tickets for herself and husband to go to Idaho; that after she left Burke, Idaho, in September, 1901, her husband had never lived with her, spoken to her, or contributed one cent to the support of herself and child.

Defendant testified that he moved from his father's farm to Webb City because his wife was dissatisfied with living on a farm; that after moving to Webb City he secured employment in the mines and was making good wages, but his wife became dissatisfied again and wanted to move west and to satisfy her they went to Burke, Idaho; that he went to work in the mines there, earning $2 a day, but in about a month after they located in Burke his wife became dissatisfied and wanted to return to her father's in Missouri; that he tried to prevail upon her to stay with him at Burke and did all he could to make her satisfied; that they "had no fights or anything like that. I told her if she wanted to come back, she could come; I couldn't keep her there. I gave her what money I had. I went and drawed my wages. Before she left she sold the furniture, everything that amounted to anything; she sold that herself and took the money, and I gave her this money and told her if

she wanted to go she could go that I wasn't.    I told her that if she did go and wouldn't stay, that that settled it; that we wouldn't live together any more;'' that they had not lived together and he had not tried to live with her or had anything to do with her or contributed anything to her support from that time.

There is other evidence in the record, but the foregoing is all there is in respect to the time and place of the abandonment, if there was one.

The evidence of both prosecutrix and defendant conclusively shows that if there was an abandonment by the husband, the offense was committed at Burke, Idaho, when, according to her testimony, to get rid of his wife he sent her under a false pretense to Spokane.    The evidence of defendant is that the final separation took place at Burke, Idaho, and of both is, that they never lived together as man and wife after this separation; that they had not even spoken to each other and that defendant had had no communication with his wife whatever, and had not contributed nor offered to contribute anything whatever to her support.    It thus conclusively appears from the evidence that the alleged abandonment occurred in the State of Idaho and the offense if committed, was committed against the laws of the State of Idaho and not against the laws of the State of Missouri.    State v. Weber, 48 Mo. App. 1. c. 503; State v. Miller, 90 Mo. App. 131.

The court should have taken the case from the jury by a peremptory instruction to find for defendant.

The judgment is reversed and the cause remanded. *Reyburn,* and *Goode, JJ.,* concur.