### The People of the State of Illinois, Defendant in Error, v. William H. Flury, Plaintiff in Error.

#### Gen. No. 16,427.

1. HUSBAND AND WIFE—*wife abandonment.* A proceeding under the act approved May 13, 1903, providing that one who, without cause, abandons and neglects and refuses to provide for his wife or minor children, is guilty of a misdemeanor and liable to fine and imprisonment, is criminal, notwithstanding the court has power to direct the fine to be paid to the wife.

2. CONFLICT OF LAWS—*where abandonment of wife takes place.* A husband who left his wife in New York and came to Illinois cannot be prosecuted under the act approved May 13, 1903, making abandonment and failure to provide for the wife or children, without cause, punishable criminally, since the offense was committed in New York, and not in this state.

3. HUSBAND AND WIFE—*abandonment not continuing offense.* Under the Act approved May 13, 1903, making the offense of abandonment coupled with neglect and refusal to provide for the wife or minor children punishable criminally, the offense is not a continuing one.

4. HUSBAND AND WIFE—*what is not abandonment.* Where a husband abandoned his wife in New York and came to Illinois, and subsequently, on demand in Illinois, refused to resume marital relations, he is not punishable under the Act approved May 13,

1903, relating to abandonment and refusal to provide for the wife or minor children.

Prosecution for wife abandonment. Error to the Municipal Court of Chicago; the Hon. JOHN R. NEWCOMER, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed October 7, 1912.

ALONZO M. GUFFEN, for plaintiff in error.

JOHN E. W. WAYMAN, for defendant in error; GEORGE J. CRANE, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The plaintiff in error, William H. Flury, was tried before the Municipal Court sitting without a jury—he having formally waived a jury trial—for wife abandonment. The prosecution was under the Act approved May 13, 1903, the essential parts of which are as follows:

"Be it enacted, etc. That every person who shall, without good cause, abandon his wife and neglect and refuse to maintain and provide for her, or who shall abandon his or her minor child or children under the age of twelve years in destitute or necessitous circumstances and wilfully neglect or refuse to maintain and provide for such child or children, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than one hundred dollars or more than five hundred dollars, or by imprisonment," etc., "*  *  *  and should a fine be imposed, it may be directed by the court to be paid in whole or in part to the wife." *  *  *

The information charged that William H. Flury "heretofore, to-wit, on the 14th day of December, A. D. 1909, at the City of Chicago in said County of Cook in the State of Illinois aforesaid, being then and there the lawful husband of Permelia Flury, and she, the said Permelia Flury, then and there being the lawful wife of him, the said William H. Flury, and they, the said

Permelia Flury and said William H. Flury having before and up to said time lived and cohabited together as husband and wife, he, the said William H. Flury, did then and there wrongfully and unlawfully and without good cause abandon and neglect and refuse to maintain and provide for his said wife, the said Permelia Flury, contrary to the statute in such case made and provided and against the peace and dignity of the people of the State of Illinois."

The facts developed at the trial, so far as it is necessary for us to state them in the view we take of the law, were that the plaintiff in error was living with his wife and daughter in Brooklyn, New York, before and on November 15, 1903. On that day, in consequence of marital differences not necessary to specify, he left his wife and daughter and came away from the State of New York. Mrs. Flury took possession of a store which the defendant had in Brooklyn, and after managing it for a time sold it. She also, whether with or without the voluntary action of her husband, obtained the proceeds of other property to which he fell heir after the desertion. The daughter died in 1908. Before her death the plaintiff in error occasionally sent her money and after her death contributed to the funeral expenses. But he has never lived with his wife after leaving her in Brooklyn in 1903.

On December 14, 1909, the plaintiff in error was living and employed in Chicago. Mrs. Flury came to Chicago on that day and sought an interview with her husband and made a demand that he should live with her, which he refused to do.

The finding of the court was that the defendant was guilty in manner and form as charged in the information, and the judgment was that he pay a fine of $364 in weekly instalments of $7 per week for one year for the use of his wife.

To reverse this judgment Flury sued out this writ of error. We think it must be reversed. It is to be borne in mind that notwithstanding the form of judg-

ment which the statute authorizes, and which was used in this case, the proceeding is not a civil one brought by the wife, but a criminal one for an offense against the peace and dignity of the people of the State of Illinois.

But if there were such an offense in this case as the statute under which the prosecution was brought defines—an abandonment coupled with neglect and refusal to maintain and provide for a wife without good cause—it was not committed in this state, was not against the peace and dignity of this state and cannot be successfully prosecuted in this state. The abandonment or desertion which is of the gist of the offense took place in the State of New York. It was not a continuing offense. In the language of Judge Gilbert of the Supreme Court of New York on a similar statute, "The offense is complete when the abandonment takes place, and it is only one offense whether the separation be long or short." Bayne v. The People, 14 Hun, 181.

Nor is a constructive abandonment, such as it is contended that the refusal on December 14, 1909, to resume marital relations constituted, in our opinion the offense defined by the statute.

We note by the transcript of the record that the learned judge who tried the case below was of a contrary opinion and expressed his belief that cases of authority in other states could be found to sustain the position that "wife abandonment was a continuing offense taking place wherever the wife makes a demand on her husband to live with her as husband and wife, and that at that time a new offense takes place as though the original abandonment had taken place."

We have made a search, without success, for cases holding this, since there appears no decision of our own Supreme Court to control us. But we find numerous decisions on similar statutes which hold expressly or by implication the contrary.

Besides Bayne v. People, 14 Hun, 181, previously al-

luded to, there may be cited: Milbourne v. State, 161
Ind. 364; People v. Neyer, 79 N. Y. Supp. 367; People
v. Allen, 153 N. Y. 629; Jemmerson v. The State, 80 Ga.
111; State v. Justus, 85 Minn. 114; State v. Shuey, 101
Mo. App. 438; People v. Crouse, 83 N. Y. Supp. 812.
And to the same effect is the summing up of the au-
thorities in 21 Cyc. 1613.

Language used by Judge Paxson of Pennsylvania in
Commonwealth v. Bailey, 2 Legal Gazette (Philadel-
phia), 394, Dec. 16, 1870, although of an inferior court
is pertinent enough to quote. After stating that the
scope of the Act invoked by the State in that case im-
plied that the desertion must take place within the
State, and that the commission of the offense within
the State was necessary to give jurisdiction in any
criminal case, he proceeds:

"Applying these views of the law to this case we
are brought to the inquiry, did the defendant desert his
wife within our jurisdiction. The uncontradicted evi-
dence is that the desertion took place in Massachusetts
in January, A. D. 1869. The parties have never lived
together since. The wife meeting her husband in a rail-
road car at Wilmington on his way to join the army
in a distant territory, follows or rather accompanies
him to this city, and procures his arrest while stop-
ping over night at the Continental Hotel. He refuses
to see her upon their arrival in this city, and it is
argued that this amounts to a desertion here. We can-
not assent to this view of the case. The desertion is a
single act. It was complete in January, 1869, and was
committed out of this State. To hold that where a
man deserted his wife nearly two years ago in another
State, he may be arrested in any county or state in
which his wife may happen to meet him *in transitu,*
would make the way of a matrimonial transgressor
hard indeed. Suppose the desertion were an indictable
offense. Could the defendant be convicted for daily
desertions covering two years or twenty years? Would
not the plea of *autrefois convict* or *autrefois acquit* be
a flat bar to a subsequent indictment for the same
desertion, no matter how long it may have been con-

tinued? And if so, why should we split up this offense into as many different offenses as there are days during the continuance of the alleged desertion?''

The judgment of the Municipal Court in this cause is reversed.

*Reversed.*