[No. 2168]

IN THE MATTER OF THE APPLICATION OF GEORGE OLIVER ROBERSON FOR A WRIT OF HABEAS CORPUS.

[149 Pac. 182]

1. HABEAS CORPUS—EXTRADITION—FUGITIVE FROM JUSTICE.
   A person sought to be extradited may show upon a proceeding in *habeas corpus* that he is not a fugitive from justice.

2. EXTRADITION—PLACE OF COMMISSION OF OFFENSE—FUGITIVE FROM JUSTICE.
   A person must be within the state at the time of the commission of the acts constituting the offense for which he is sought to be extradited in order to become a fugitive from justice.

3. EXTRADITION—FUGITIVE FROM JUSTICE—WIFE ABANDONMENT.
   Petitioner in *habeas corpus* was married in the state to which he was sought to be extradited. He was a minor and was dependent upon his father for support. After the marriage defendant and his wife separated voluntarily, the wife going back to live with her mother. When petitioner left the state he had no intention of separating from his wife, or of abandoning her. *Held*, that he was not a fugitive from justice within the law of extradition upon the charge of wife abandonment in the state of his marriage.

APPLICATION by George Oliver Roberson for a writ of *habeas corpus*. **Writ granted,** and petitioner discharged.

*George Springmeyer*, for Petitioner:

Petitioner is not a fugitive from the justice of the State of North Carolina, in that he is not legally married. (Section 2088, Rev. Laws N. C. 1905; section 1560, Id.)

Venue must be laid in the county in which the crime is alleged to have been committed. (*State* v. *Patterson*, 5 N. C. 443; *State* v. *Pray*, 30 Nev. 206, 208.) A crime committed in one county or district cannot be tried in another county. (*Ex Parte Kuhns*, 36 Nev. 487, 137 Pac. 83; *Ex Parte Smith*, 35 Nev. 30; *Eureka County Bank Cases*, 35 Nev. 80.)

The crime is committed and the venue may be laid only in the county where the parties lived together as husband and wife, and where the husband separated from or left his wife. (*State* v. *Justus*, 85 Minn. 114, 88 N. W. 415; *People* v. *Sagazei*, 59 N. E. 1031; *Cuthbertson* v. *State*, 101 N. W. 1031; *State* v. *Shuey*, 74 S. W. 369.) Abandonment must be physical, and not merely constructive. (*Milbourne* v. *State*, 161 Ind. 364, 68 N. E. 684; *People* v. *Wexler*, 136 N. Y. S. 679; *People* v. *Flury*, 173 Ill. App. 640.)

*Sweeney & Morehouse, Geo. B. Thatcher*, Attorney-General, and *E. T. Patrick*, Deputy Attorney-General, for Respondent:

The laws of North Carolina make it a criminal offense for a man to abandon his wife and child. This court has no right to pass upon the guilt or innocence of petitioner. The questions of venue and jurisdiction should not be confused.

A fugitive from justice is one who, having within a state committed a crime against its laws, when he is sought to be submitted to its criminal process to answer for his offense, has left its jurisdiction and is found within the territory of another state. (*Ex Parte Dixon*, 69 S. W. 943; *State* v. *Richter*, 37 Minn. 436; *In Re Voorhies*, 32 N. J. L. 141; *People* v. *Pinkerton*, 17 Hun, 199; *Johnson* v. *Ammons*, Ohio Dec. Am. Law Record, 747; *Ex Parte Van Vleck*, 6 Id. 636; *Coleman* v. *State*, 53 Tex. Crim. 93; *Brun* v. *Rayner*, 124 Fed. 481.)

By the Court, McCarran, J.:

This is an original proceeding in *habeas corpus.*

Petitioner relates, among other things, that he is unlawfully imprisoned, detained, confined, and restrained of his liberty by J. H. Stern, as sheriff of Ormsby County, Nevada, and J. D. Hillhouse, as chief of police of the city of Reno, Washoe County, Nevada, and by J. C. Crawford, as sheriff of Martin County, State of North Carolina, who has been deputized and appointed by the governor of the State of North Carolina as the agent of that state for the purpose of taking and carrying petitioner from the State of Nevada to the State of North Carolina.

Petitioner relates that he is a citizen and resident of the State of Nevada; and the admitted facts are that on the 25th day of February, 1915, the governor of the State of Nevada made and executed an executive warrant, pursuant to a requisition issued by the governor of North Carolina; such requisition declaring petitioner to be a fugitive from justice from that state, by reason of the fact that the grand jury of the superior court of Martin County, N. C., had filed an accusation in that court, wherein petitioner was charged with the crime of having deserted his wife and child in said county of Martin, State of North Carolina.

The accusation as filed by the grand jury of Martin County, in part is as follows:

"The jurors for the state upon their oath present: That Ollie Roberson, late of the county of Martin, on the ____ day of December, in the year of our Lord one thousand nine hundred and thirteen, with force and arms, at and in the county aforesaid, unlawfully and wilfully did abandon his wife, one Lucy Roberson, without providing adequate support for her, the said Lucy Roberson, and the child which he, the said Ollie Roberson, left on the care of his said wife, had heretofore begotten contrary to the form of the statute in such case made and provided, and against the peace and dignity of .the state; and the jurors aforesaid, upon their oath aforesaid, do further present: That the said Ollie Roberson, late of the county of Martin, then on the ____ day of December, 1913, at

and in the county aforesaid, while living with his wife, one Lucy Roberson, continually from said last-mentioned day, while so living with his wife to the time of taking this inquisition, unlawfully and wilfully did omit, neglect and refuse to provide adequate support for his said wife, the said Lucy Roberson, and did fail to support her and the child which he, the said Ollie Roberson, upon the body of his said wife had begotten."

It appears from the record that petitioner was arrested by J. D. Hillhouse, chief of police of the city of Reno, upon the executive warrant of the governor of this state, and thereafter, by some proceeding, the nature of which is unknown to us, was admitted to bail; and later, having come into Ormsby County, surrendered himself to the sheriff of this county and sued out this writ.

It is suggested by counsel for respondent in this case that petitioner is not entitled to invoke the writ of *habeas corpus*, for the reason that he is in custody of his own voluntary act in having surrendered to the sheriff of this county. However that may be, even though we should hold this point well taken, petitioner would be entitled to institute original proceedings in the court against any one in whose custody he might hereafter be held, until the merits of the matter involving the legality of the proceedings under which and by reason of which he was restrained of his liberty had been finally determined by this court. Hence, a holding by this court at this time to the effect that petitioner was not entitled to the writ by reason of the fact that he was in voluntary custody would only entail additional proceedings and thus delay. For this reason, we have concluded that a decision upon this suggested phase is not essential.

This court has in the past established a rule that a person held upon an executive warrant may, upon *habeas corpus* proceedings, show that he is not a fugitive from justice; and upon such showing being made, we have held that he is entitled to be discharged.

In the *Eureka Bank Cases*, 35 Nev. 80, 126 Pac. 655, 129 Pac. 308, this court said:

"After all, should not the controlling question be whether

there is any probable cause or evidence to indicate that the accused has committed any act within the jurisdiction of the court, which the law makes criminal, or is there anything for it to try, or any evidence available to the state which would indicate the commission of an offense or sustain a conviction? Under our statute, with its liberal provision for taking testimony and for the examination of the merits of the case, we see no reason why we should not investigate it to the bottom and discharge any of the petitioners, if justice requires, or if it is clear that they have not committed any acts within the county or the jurisdiction of the court, which the law makes criminal."

Again, in the case of *Ex Parte Kuhns*, 36 Nev. 487, 137 Pac. 83, 50 L. R. A. n. s. 507, we referred to the Eureka Bank cases approvingly, and held that a person who was not within a demanding state at the time an alleged crime was committed could not be a fugitive from justice, unless he be an accessory.

In the case at bar, it is the contention of petitioner, and his contention in this respect is borne out by the testimony of his wife, that he never lived with his wife in Martin County, N. C. The facts disclosed by the testimony of the wife of petitioner are to the effect that they were married on the last day of June, 1913, by a justice of the peace, near Williamston, in Martin County, N. C.; that the marriage took place between 7 and 8 o'clock in the morning; that immediately after the marriage the couple went by automobile from the residence of the justice of the peace to the town of Williamston, boarded a train at that place, and continued on to Raleigh, Wayne County, N. C., and there continued to live together as man and wife until December 17, 1913, on which date petitioner, according to his wife's testimony, went to Hamlet, N. C.; and on the following day, to wit, December 18, his wife left their former place of abode in Raleigh and returned to the home of her mother and grandfather, with whom she had lived prior to the marriage in Martin County, North Carolina.

Testimony of the wife of petitioner also discloses that prior to his departure from Raleigh for Hamlet, petitioner

employed a physician in the city of Raleigh for the benefit of his wife, she being shortly to be delivered of a child.

With reference to her leaving Raleigh on the 18th of December, the day following the departure of her husband, Mrs. Roberson testified as follows:

"Q. You say it was your mother or grandfather who sent you the money with which to come home? A. My mother.

"Q. Will you please, mam, tell me when it was she sent it to you? A. The week before. I came the next.

"Q. Do you mean to say that a week before you came home that your mother had sent you money to come home on? A. Yes, sir; that is what I mean to say.

"Q. Then you knew a week before he left you in Raleigh that you were coming home? A. Yes, sir; I knew that I intended to."

Taking this testimony, as given by the wife of petitioner, together with petitioner's own statement under oath in this court, it appears that the separation which occurred on December 17 in Raleigh, Wayne County, N. C., between petitioner and his wife, was a mutual separation, whether it was at that time intended to be permanent or otherwise. There is nothing in the testimony of the wife of petitioner, as it is before us, from which we could infer that her act in separating from petitioner was other than a voluntary one on her part. They had lived in Raleigh from the date of their marriage, to wit, the last day of June, 1913, until the 17th day of December of the same year. He had attended school to some extent during their stay in Raleigh.

The testimony of petitioner is to the effect that from Hamlet he went to Poughkeepsie, N. Y., and there attended school, later coming to Nevada and entering the university of this state, in which institution it appears he is still enrolled as a student.

From all the facts and circumstances as they are presented by the record, we can come to no other conclusion than that the separation which took place between petitioner and his wife on the 17th day of December, 1913,

in Raleigh, Wayne County, was an act of mutual assent, the wife leaving the former abiding place and returning to the home of her parent and guardian without any intimation, so far as the record discloses, of trouble or discord occurring between the parties.

There is a circumstance in the record, as disclosed from the testimony of the wife of petitioner, which might lead us to believe that petitioner had expected his wife to remain in Raleigh, at least until after her child was born. This might be inferred, as we have already said, from the fact that petitioner had engaged a Raleigh physician to attend his wife on the occasion of her confinement. Whether or not it be a proper inference to draw from this that petitioner expected his wife to remain in Raleigh is immaterial.

The money on which Mrs. Roberson returned to her former home was, according to her statement, sent to her by her mother; and it is not unfair to presume, from the record, and especially from the testimony of the wife of petitioner, that the money was sent to her by her mother for the very purpose toward which she applied it, namely, to pay her expenses back to her mother's home. We refer to these facts only to support the conclusion which to us appears manifest from the record; that the separation between petitioner and his wife was mutual; and the separation constituting the act of desertion, if desertion it be, occurred in the city of Raleigh, Wayne County, N. C., and not in Martin County.

It was suggested in the oral argument by attorney for respondent that the jurisdiction of the superior court of any county in North Carolina was not confined exclusively to matters occurring within that county, and hence the jurisdictional power of the superior court of Martin County was sufficient to give that court control over this case, even though the desertion took place in Wayne County.

It is our judgment that respondent's position in this respect is untenable, in view of the decision of the superior court of North Carolina in the case of *State* v. *Patterson, et al.*, 5 N. C. 443, wherein the court said:

"The superior court of one county has no jurisdiction of criminal offenses committed in another county, although both of the counties belonged to the same judicial district, before the act of 1806, ch. 2.    *    *    *

"The legislature intended to give to the several county superior courts, jurisdiction over the same offenses and civil matters which the district superior courts had in 1806, limiting the territory within which that jurisdiction was to be exercised to the county in which the court was held.    In all indictments, it must appear that the offense charged was committed within the territorial jurisdiction of the court."

It has been held almost uniformly by the courts, in which this subject has been considered, that only the courts of the state in which the abandonment occurred have jurisdiction.   (*State* v. *Weber*, 48 Mo. App. 503; *State* v. *Miller*, 90 Mo. App. 131; *State* v. *Shuey*, 101 Mo. App. 438, 74 S. W. 369; *People* v. *Flury*, 173 Ill. App. 640; *People* v. *Sagazei*, 27 Misc. Rep. 727, 59 N. Y. Supp. 701; 21 Cyc.; *Ex Parte Kuhns, supra.*)

While, as we have already stated, the courts have held almost universally that the courts of the state in which the act of abandonment took place have jurisdiction to try parties accused, the question as to whether or not a party can be successfully tried and convicted in one county, where the abandonment admittedly took place in another, has not been before the courts to such an extent as to crystallize any particular rule relative to jurisdiction.   Notwithstanding this, however, courts in which this matter has been considered have held quite uniformly that prosecution for the crime of abandonment must take place in the county where the parties resided at the time of their separation.

Says the Supreme Court of Nebraska, in the case of *Cuthbertson* v. *State*, 72 Neb. 727, 101 N. W. 1031:

"It is quite immaterial where the first act of separation occurs, if such act is followed by a wilful refusal to support at the place previously provided by the husband and considered by them as their home.   The county in which

the home is fixes the venue of the offense." To the same effect is the case of *People* v. *Vitan* (Ct. Gen. Sess.), 10 N. Y. Supp. 909.

Speaking upon this subject in a case where the state made a similar contention to that made by respondent here, the Supreme Court of Minnesota said:

"If the contention of the state be correct, then the wife may, by taking up her residence in any county in the state she may elect, make the crime ambulatory, and render the husband guilty of felony therein, although he may never have been within such county. That she cannot do so is too obvious to justify any discussion of the proposition, for this case does not fall within the limited class of cases in which a party may become liable to punishment in a particular jurisdiction while his personal presence is elsewhere, for example, circulating a libel in a county in which he is not personally present." (*State* v. *Justus*, 85 Minn. 114, 88 N. W. 415.)

Said the court in *Commonwealth* v. *Douglas*, vol. 2, Lancaster Law Review, 179, speaking upon a similar subject:

"If she (the wife) voluntarily moves into another county, it does not change his (the husband's) domicile, or make him a deserter for not following her."

As we have already observed, in the case at bar, the only place where petitioner and his wife established a domicile, or lived together as man and wife, was in the city of Raleigh, Wayne County, N. C. The desertion, if any, took place in that city and county. The offense with which petitioner stands accused by the indictment found in Martin County, North Carolina, is not a continuing offense, nor one which might be termed transitory or ambulatory in its nature.

In the case of *Ex Parte Waterman*, 29 Nev. 288, 89 Pac. 291, 11 L. R. A. n. s. 424, 13 Ann. Cas. 926, this court went at length into the subject of its right to review on *habeas corpus*, the sufficiency of the papers on which the executive warrant is issued; and in that case the court, speaking through Mr. Justice Sweeney, said:

"While I believe in paying the highest respect to the

requisition warrants of chief executives of other states, and believe that any executive would hesitate before issuing his requisition warrant knowingly without believing that sufficient and legal grounds existed on which to ask the extradition of a defendant, yet my regard for the sacred writ of *habeas corpus* is such that I would jeopardize the retention of the good-will of any one rather than nullify, modify, or limit in any way the prerogatives of this great writ—the greatest bulwark of our liberty— and which gives every person under our glorious government the right to appeal to a judicial tribunal when restrained of his liberty, and privileged to have the party in whose custody he is detained directed to produce his body, and show by what right or authority of law he is depriving him of his liberty."

At another place in the opinion, the learned justice said:

"If a defendant is unjustly accused, or illegally charged, or restrained of his liberty, certainly justice demands that he should not be deprived of his liberty or removed hundreds or thousands of miles, as the case may be, there to wait or be put on trial on an illegal charge. The sooner his detention, if it be illegal, is so ascertained, the better."

The right of this court to go behind the executive warrant and inquire into the validity of the papers upon which or by reason of which the executive warrant issued was emphasized in the case of *Ex Parte Waterman, supra.* There is no question going to the validity of papers or proceedings preliminary to the issuance of an executive warrant for one charged as being a fugitive from justice more vital or significant to the whole proceeding than the jurisdiction of the court or tribunal out of which the original accusation, information, or indictment issued. If it be an undisputed fact, such as we deem it in this case, that the court out of which the indictment issued was and is devoid of jurisdiction to try the petitioner on the accusation thus filed; if, as a matter of fact, that court, under the rule laid down by the Supreme Court of the State of North Carolina (*State* v. *Patterson, supra*), would be precluded, for want of jurisdiction, from passing judgment on this defendant on the indictment thus filed, in view

of the fact that the offense, if any, was not committed within the county, in which that court has jurisdiction— we find ourselves constrained to reassert the rule so ably laid down by the learned jurist in the case of *Ex Parte Waterman, supra,* to the effect that justice demands that the petitioner should not be removed hundreds or thousands of miles, as the case may be, there to wait the action of a court which must eventually declare its own lack of jurisdiction.

[1] It is well-settled law that a person sought to be extradited may show upon a proceeding in *habeas corpus* that he is not a fugitive from justice. In the recent case of *Ex Parte Kuhns, supra,* we held that where the petitioner at the time of leaving the State of Pennsylvania was not in default under the statute of that state "making it a misdemeanor for a husband and father to desert and neglect to support his wife or child," his subsequent neglect, while a citizen of another state, to support his family in the demanding state, would not render him a fugitive from justice therefrom.

[2] Subject to some possible exceptions, within which this character of case does not fall, it is the general rule that a person must be within a state at the time of the commission of acts constituting the offense in order to become a fugitive from justice.

Petitioner is indicted under a section of the criminal code of North Carolina (Revisal, 1905, sec. 3355), which provides:

"If any husband shall wilfully abandon his wife without providing adequate support for such wife, and the children which he may have begotten upon her, he shall be guilty of a misdemeanor."

[3] It appears from the evidence introduced upon the hearing of this case without conflict, that the petitioner was under 18 years of age at the time of his marriage, and is still a minor; that the petitioner was at such time, ever since has been, and is now, without means and dependent upon his father for support; that after the marriage, defendant and his wife, who was near his own

age, went to live at Raleigh, where petitioner attended school; that it was the desire of petitioner's father that petitioner complete his education, and it would seem to have been the understanding of all parties that petitioner was to complete his education at his father's expense before assuming the burdens of providing for his family; that after residing some months at Raleigh, it was mutually agreed between petitioner and his wife that petitioner should go to Poughkeepsie, N. Y., and continue his studies there at his father's expense; that at the time of petitioner's departure for Poughkeepsie, the relations of the parties were harmonious and so continued for some time thereafter; that at the time petitioner left the State of North Carolina he had no intention of permanently separating from his wife or abandoning her; that if petitioner formed an intent to abandon his wife and child, such intent was formed some considerable time after he had left the State of North Carolina.

This case in some respects is *sui generis,* but from the fact that the petitioner left the State of North Carolina under the circumstances disclosed without conflict in the evidence, I am of the opinion that he is not a fugitive from justice within the law of extradition, and is entitled to his discharge.

From the foregoing it follows that the writ of. *habeas corpus* heretofore issued by this court should be perpetuated, and that petitioner should be discharged from custody.

It is so ordered.

NORCROSS, C. J., and COLEMAN, J.:

We concur in the order, and in so much of the foregoing opinion as holds that petitioner is not a fugitive from justice.