## ELMONT F. PRESTON V. STATE OF NEBRASKA.

FILED OCTOBER 14, 1921. No. 21952.

1. Evidence examined, and *held* insufficient to support the verdict.

2. Parent and Child: FAILURE TO SUPPORT CHILD: WILFUL NEGLECT. The failure of the husband to furnish his wife money for the maintenance of a two months old infant born in the home of her parents, after she had left the matrimonial domicile without cause and contrary to his wishes, is not in itself wilful neglect. or refusal to provide for such child, within the meaning of section 8614, Rev. St. 1913.

3. Criminal Law: ACTION FOR ABANDONMENT: VENUE. The county in which the matrimonial home or domicile of the husband and wife is located fixes the venue of a case prosecuted under section 8614, Rev. St. 1913, and such case cannot be instituted in another county.

4. Husband and Wife: DOMICILE. The husband has the right to establish the matrimonial domicile, and it is the duty of the wife to recognize that fact.

5. Parent and Child: ABANDONMENT: APPLICATION OF STATUTE. No inflexible rule can be laid down for the application of section 8614, Rev. St. 1913; each case must be decided on its own merits; the statute was enacted for a wise purpose, but is capable of abuse and of being made an instrument of intolerable oppression.

6. Penal Statutes: CONSTRUCTION. It is elementary that penal statutes are inelastic and must be strictly construed; they are never extended by implication.

ERROR to the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Reversed.*

*D. W. Livingston*, for plaintiff in error.

*Clarence A. Davis, Attorney General*, and *Mason Wheeler, contra.*

Heard before MORRISSEY, C.J., ROSE and ALDRICH, JJ., ALLEN and REDICK, District Judges.

ALLEN, District Judge.

The plaintiff in error, Elmont F. Preston, was convicted of the crime of abandoning and wilfully neglecting and

refusing to provide for his minor child, Robert Elmont Preston, under section 8614, Rev. St. 1913, and from a judgment of guilty on the verdict and a sentence to one year's imprisonment in the penitentiary, he has brought the case to this court for review. For convenience, the parties will remain classified as they were in the district court.

January 28, 1921, the county attorney filed a complaint in the district court for Otoe county containing two counts, the first charging that the defendant, on or about May 26, 1920, in said county, wilfully and feloniously refused and neglected to support, maintain and provide for his wife, and the second reading as follows:

"And the said Geo. H. Heinke, county attorney within and for the county and state aforesaid, for further complaint and information makes upon his oath as aforesaid, and says that on or about May 26, 1920, that Elmont F. Preston, then and there being in said county as aforesaid, and then and there being the father of Robert E. Preston, aged two months, then and there being in said county, and being a minor, did then and there without good cause unlawfully, wilfully and feloniously abandon the said Robert E. Preston, his minor child, and did then and there unlawfully, wilfully and feloniously neglect to support, maintain and provide for said Robert E. Preston, his said minor child, although of sufficient ability so to do, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state of Nebraska."

It does not appear when the prosecution was instituted. At the conclusion of the state's case, the court directed a verdict for the defendant on the first count, and we have to deal only with the case stated in the second. The state introduced two witnesses, May Preston, wife of the defendant, and Margaret Gaskell, her mother; while the defendant testified in his own behalf, and introduced the testimony of W. R. Holly, Louise Schnittker, and his mother, Mrs. W. J. Preston.

The pivotal facts are not in dispute and are, in substance, these: The defendant and May Gaskell were married in Kansas City, Missouri, March 10, 1915, and sometime thereafter, probably in 1917, moved to Kearney, Nebraska, where the defendant purchased and furnished a comfortable five-room house for his family, and engaged in the occupation of garageman as a means of supporting himself and wife and paying a mortgage debt upon his home. October 21, 1919, a quarrel arose between them, because, in his absence, she had purchased a rug which he insisted was unnecessary and inadvisable, inasmuch as the house was carpeted and his income limited; and, over the defendant's protest and contrary to his wishes, she left home in anger and reached her parents' home the next day. She left her work undone and the dishes unwashed on the table. She was *enceinte* at the time, and her child was born in Otoe county, March 6, 1920, and it was a little over two months old when, it is said, the defendant abandoned it. After the prosecuting witness left Kearney, the defendant kept the home open and continued to occupy it until some time in July, 1920. She returned in November, 1919, and remained a week or more and then went back to her parents. The defendant never lived or had a residence in Otoe county, nor was a home established there. He visited his wife and baby in March, April, and May, 1920, and on his last visit, May 19, 1920, he remained with his wife and child in the home of her parents for a few hours, at which time their differences were talked over, and it was agreed that, on account of the trouble they had had in Kearney, they could not return, and did not want to live in Nebraska City, and that the Kearney property and its contents should be sold and a residence established elsewhere; but no place was agreed upon. She testified that he said she should, in the meantime, live with her parents: "Well, we didn't expect to establish a residence here, but I was to stay here until he came after me, and this was to be my home until he came and got me. * * * Well, I was to live

there with mother until he came and got me." The defendant gave his wife $75 with which to pay expenses incident to her lying-in sickness. Pursuant to the understanding of May 19, 1920, the Kearney home and its contents were sold in July, after which the defendant went to Imperial, Nebraska, and for two months, probably, there was no correspondence between them. There is no testimony that any specific demand for money was made on the defendant for the support or maintenance of the child, but there is some testimony that the prosecuting witness wrote him for money, while he testified that he sent her some, but the amount is not stated. There is no testimony that the child needed additional shelter, clothing, a nurse, or anything else. It drew nourishment from its mother; presumptively it slept with her in the same bed and under the same roof. Its requirements must, of necessity, have been few and simple. There is no evidence tending to show that any request was made of the defendant for money, apart from that which the prosecuting witness was to use for herself. There was no excuse for Mrs. Preston leaving her Kearney home. The fact that her husband, during their quarrel over the rug, may have said that if she left it would be final and she could not return, and that he advertised her, did not seem to have any effect, as she returned and remained for many days. That she did not intend to establish a residence in Otoe county is manifest from her admitted statement to her mother-in-law: "I told her I would go back. Q. Did you go back after that? A. Yes, sir; shortly after that I went up to Kearney; within a week or two. * * * Q. You did express a wish to that effect, didn't you, Mrs. Preston? A. I did." But it does not appear that she communicated the wish to her husband, or that he knew of her desire. But, apart from this, the conduct of the husband, however unnecessary and uncalled for, furnished no excuse for her desertion of her home.

That part of section 8614, Rev. St. 1913, applicable to this case, is as follows: "Whoever abandons his or her

legitimate or illegitimate child or children under the age of sixteen years, and wilfully neglects or refuses to provide for such child or children, shall, upon conviction, be deemed guilty of a desertion and be punished by imprisonment in the penitentiary for not more than one year, or by imprisonment in the county jail for not more than six months."

The defendant's failure to send money to the prosecuting witness on her request seems to have been considered as an abandonment and wilful neglect or refusal to provide for his minor child. This is a *non sequitur* and the interpretation is incorrect. The defendant left with his wife's consent and there is nothing to show that he was then or thereafter informed that the child needed anything. Of course, the defendant owed the child the duty "to provide for" it; but to convict him, it was necessary to prove that it was in necessitous circumstances. He was not required to send the prosecuting witness money "to provide for such child," as he might provide for it directly or by establishing a credit where articles suitable to its condition could be purchased. The failure or refusal of the husband to send the prosecuting witness money on her demand was not the commission of a crime. The phrase, "whoever abandons his * * * child * * * under the age of sixteen years, and wilfully neglects or refuses to provide for such child," shall be guilty of the crime of desertion, is elliptical. "Wilfully neglects or refuses to provide" what? Not money, but those things that were necessary to the comfort, health and protection of an infant slightly over two months of age. The state made no attempt to show that the defendant had neglected or failed in this respect. No inflexible rule can be laid down in cases of this kind; each must be decided on its own merits. The statute was enacted for a wise purpose, but is capable of abuse and being made an instrument of intolerable oppression. It is elementary that penal statutes are inelastic and must be strictly construed; they are never extended by implica-

tion. *Andrews v. United States*, 2 Story (U. S. C. C.) 202, 1 Fed. Cas. No. 381, p. 904. The testimony is, in our judgment, insufficient to support the verdict.

The defendant urges that the venue was laid in the wrong county, and that the district court for Otoe county had no jurisdiction of the case. It is elementary that, notwithstanding modern statutes have greatly changed the status of married women, the husband is the head of the family and has the right to choose the matrimonial domicile, and this right must be recognized by the wife. The matrimonial domicile of the defendant and his wife May 26, 1920, when it is claimed he committed the offense, was in Buffalo county. In *Cuthbertson v. State*, 72 Neb. 727, it is said: "The county in which the home is fixes the venue of the offense." That case was well considered and has stood the test for nearly 17 years, and is vindicated by the ruling in *State v. Smith*, 145 La. 913; *State v. Justus*, 85 Minn. 114; *State v. Baurens*, 117 La. 136; *State v. Fick*, 140 La. 1063; *In re Roberson*, 38 Nev. 326; *State v. Dangler*, 74 Ohio St. 49; *State v. Dvoracek*, 140 Ia. 266; *In re Price*, 168 Mich. 527. Section 9024, Rev. St. 1913, provides, "All criminal cases shall be tried in the county where the offense was committed," and if the county in which the home was fixes the venue of the offense, if any, it is clear that the district court for Otoe county was without jurisdiction.

The judgment is reversed and the cause remanded.

                                                    Reversed.