## THEODORE J. WEBER V. STATE OF NEBRASKA.

FILED JANUARY 28, 1932. No. 27990.

*W. T. Wills,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Homer L. Kyle, contra.*

Heard before Goss, C. J., DEAN and EBERLY, JJ., and RAPER and RYAN, District Judges.

RYAN, District Judge.

The plaintiff in error, Theodore J. Weber, was convicted of the crime of wife and child abandonment in the district court for Boyd county under section 28-458, Comp. St. 1929, and from a judgment of guilty on the verdict and a sentence of one year's imprisonment in the penitentiary he has brought the case to this court for review. For convenience in this opinion the plaintiff in error will be referred to as the defendant.

On February 26, 1931, the county attorney filed an information in the district court for Boyd county, reading as follows: "That Theodore J. Weber late of the county aforesaid, did, on the sixth day of March, A. D. 1930, in the county of Boyd and state of Nebraska aforesaid, Theodore J. Weber then and there being, then and there unlawfully and wilfully, feloniously and without cause, abandon his wife, Merna J. Weber and his minor child under the age of sixteen years and did, unlawfully and wilfully, feloniously neglect and refuse to provide for said wife and said minor child under the age of sixteen years, without just cause, contrary to the form of the statute in

such case made and provided, and against the peace and dignity of the state of Nebraska."

Section 28-458, Comp. St. 1929, reads as follows: "Whoever, without good cause, abandons his wife and wilfully neglects or refuses to maintain or provide for her, or whoever abandons his or her legitimate or illegitimate child or children under the age of sixteen years, and wilfully neglects or refuses to provide for such child or children, shall, upon conviction, be deemed guilty of a desertion and be punished by imprisonment in the penitentiary for not more than one year, or by imprisonment in the county jail for not more than six months."

It will be seen that the information is substantially in the wording of the statute except that it fails to allege whether the child was legitimate or illegitimate. This court has several times held that an information in the wording of the statute is sufficient. In this case there was a substantial compliance, since the statute embraces both classes of children, and the assignment is without merit.

It is also contended that there is no evidence showing abandonment on the part of the husband. The evidence disclosed that the defendant and the complaining witness, Merna J. Weber, were married at Yankton, South Dakota, on May 3, 1928, while both of them were attending the high school at Butte, Nebraska. At that time the complaining witness was seventeen years of age and the defendant was nineteen. They made their home with the defendant's parents until about the 1st of September, 1928. The defendant then went to North Dakota to work and his wife stayed with her parents until the first part of November, 1928, when they both went to Tyndall, South Dakota, where they worked about three weeks. They returned to Butte early in December, 1928, and spent the winter of 1928-1929 with the defendant's parents. About the 1st of February, 1929, they moved to a farm southwest of Butte, belonging to the defendant's parents. Neither the defendant nor his wife were possessed of any property or money; the defendant's mother loaned them

money enough to start farming. The child was born on April 5, 1929. They lived together on this farm until some time in August, 1929, when the complaining witness left the defendant. There is some conflict in the testimony as to the cause of this action on the part of the complaining witness. She testified that on certain occasions the defendant had beaten and bruised her and called her names. The testimony with regard to any particular abuse or ill treatment practiced upon the complaining witness by the defendant is rather indefinite. Her testimony is rather general on this point and consists of such statements as this: He was mean to me, and he would call me names and knock me around and beat me and hit me and strike me and I didn't care to take any such abuse. The defendant positively denies that he ever struck his wife or subjected her to any physical abuse, and testifies that, after the baby was born, she refused to work and thought only of spending money. All three of the times she left him, she went directly to the home of her parents, and, if there were any evidences of any physical abuse upon her person at those times, no witness other than herself has testified to them. The quarrels do not seem to have been very serious and complaining witness returned to the defendant's home on September 13, 1929.

She then remained with the defendant until the fore part of December, 1929, when they again quarreled and she again left him and started an action for divorce against him. The divorce action was abandoned, on the very salutary advice of the trial judge that they go back and try once more to make a home. Mrs. Weber returned to her husband about December 29 or 30, 1929. This time they lived together until March 4, 1930, when another quarrel occurred and the complaining witness again left the defendant. The circumstances of this last quarrel are very much in dispute. Complaining witness testifies that the defendant took the baby from their home to the home of his parents and informed her that she could not get the baby until she went to law. The defendant's version of it

is that the baby had been sick; that the complaining witness was not giving it proper attention; and that the baby was taken and left with his parents from about the 12th of January until March 4. The defendant was at home and in the house when the complaining witness left on March 4, 1930. It appears that she did not see him nor attempt to see him, nor to communicate with him in any way, until she filed the complaint against him for nonsupport on October 3, 1930.

After March, 1930, the defendant contributed nothing to the support of his wife. His mother did, however, send some money to her at different times. The amount of this is in dispute. Complaining witness testifies it was $25, and the defendant's mother says it was $50. After the complaining witness left the defendant's home, the defendant found a letter written by her that day to an uncle, as follows:

"Dear Uncle George: I don't really think I have a right to call you that any more but I used to. You know or rather remember Will Fritz? I am his second girl and was up to see you the time I was in the Hills. The light headed one that looks like her mother. Would you do me a favor or have your daughter do it. Let me know what kind of luck a person would have up in that country finding a job. I have had trouble with my husband and we are separating. I have to have something to do and happened to think of you folks.

"Hoping to hear from you real soon,
"I remain,
"Mrs. Merna Weber.
"Butte, Nebr."

In the later part of March, 1930, the defendant took up his residence in the state of Nevada, at Reno, and on June 24, 1930, commenced a divorce action against the complaining witness at that place. The expenses of obtaining the divorce seem to have been borne by the defendant's mother. She held a chattel mortgage upon the personal property of the defendant, which was foreclosed

after their marital difficulties. There are many other matters set out in the bill of exceptions, but this, in brief, is a résumé of the stormy married life of these young people.

Under this state of facts, it is hard to conceive how it can be said that the defendant is guilty, beyond a reasonable doubt, of the crime of wife and child abandonment. The evidence clearly shows that he was in the family home at the time the wife left; he did not order her to go; she left of her own accord and made no attempt to communicate with him thereafter except through the strong arm of the law. In the case of *Preston v. State,* 106 Neb. 848, speaking of abandonment, this court said:

"No inflexible rule can be laid down in cases of this kind; each must be decided on its own merits. The statute was intended for a wise purpose, but is capable of abuse and being made an instrument of intolerable oppression. It is elementary that penal statutes are inelastic and must be strictly construed; they are never extended by implication."

It is apparent from a reading of the record in this case that these young people entered into the marriage state hastily and without a proper realization of the seriousness of the step they were taking, or of the mutual obligations and duties incident to it. It is also apparent that neither of them ever made a proper effort to adjust themselves to each other's shortcomings, nor made proper allowance for them. It is equally apparent that both of them have been badly advised. Outside of the advise of the learned trial judge, whose humanitarianism is well known, they appear to have received no wholesome advice. The complaining witness was ill advised when she commenced the divorce action in December, 1929. After she left the defendant's home on March 4, 1930, the defendant went to Reno, Nevada, and obtained a divorce. That was an ill advised action on his part and his conduct in that regard cannot be too strongly condemned. It, however, took place after his wife had left him and the evidence fails to show

any connection between it and their separation. The testimony is, in our judgment, insufficient to support a conviction.

The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.

RAPER, District Judge, dissents.