CLIFFORD STEWART, APPELLANT, V. HOWARD W. CLARKE, WARDEN, NEBRASKA STATE PENITENTIARY, AND FRANK O. GUNTER, DIRECTOR, NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, APPELLEES.

482 N.W.2d 248

Filed April 3, 1992. No. S-90-205.

John C. Lindsay, of Lindsay & Lindsay, for appellant.

Don Stenberg, Attorney General, and Elaine A. Chapman for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Petitioner, Clifford Stewart, appeals from an order of the district court for Lancaster County denying his petition for writ of habeas corpus. The appellant has been continuously under the supervision of the Department of Correctional Services

(DCS) since his initial sentence in 1971. Since that time, appellant has been either incarcerated or on parole. He has been sentenced on three different occasions. The second sentencing was for crimes committed while on parole granted on the first sentence, and itself consisted of two sentences—12 years for assault with intent to rob and a consecutive 5-year term for use of a firearm to commit a felony. The sentence on the third occasion was for a crime committed while on parole granted on the consolidated first three sentences.

The good time law in effect at all times in question provided that the maximum terms of all consecutive sentences, "whether received at the same time or at any time during the original sentence," would be added together to determine the total consolidated maximum sentence. Neb. Rev. Stat. § 83-1,110 (Reissue 1987). See *Gochenour v. Bolin*, 208 Neb. 444, 303 N.W.2d 775 (1981).

The law in effect at the time of appellant's initial sentencing (Neb. Rev. Stat. § 83-1,118 (Reissue 1971), hereinafter referred to as the "old law") provided that good time would be subtracted from the maximum consolidated sentence to determine the mandatory parole date. The law was changed in 1975 to provide that good time would be subtracted from the maximum consolidated sentence to determine the date of mandatory discharge from custody (§ 83-1,110 (Reissue 1987), hereinafter referred to as the "new law").

The last sentence imposed on the appellant was after the 1975 change in the law. However, because appellant was still on parole, under the supervision of DCS, when he committed the last crime, his sentences were consolidated and controlled by the law in effect at the beginning of appellant's continuous and ongoing relationship with DCS.

Appellant argues, in essence, that he has been denied due process and equal protection because he has been treated differently from an individual who was initially sentenced after 1975. These identical arguments were advanced by individuals in appellant's position, and rejected by this court, in *Boston v. Black*, 215 Neb. 701, 709-10, 340 N.W.2d 401, 407 (1983), where we said:

> Section 83-1,110 . . . defines an offender's sentence, for

the purpose of good time computations, to be the sum of all sentences he receives, regardless of when incurred. The date of an offender's initial incarceration is the date on which service of such consolidated sentence is deemed to begin. Consequently, any good time credited toward the consolidated sentence of an offender sentenced prior to the effective date of [the new law] which would reduce the period such offender is to remain subject to the penal authority of the state (but for [the new law]) would result in the commutation of a sentence by legislative action. This is a power denied to the Legislature by this state's Constitution.

We also disposed of the equal protection claims when we stated in *Black*, 215 Neb. at 712-13, 340 N.W.2d at 408-09:

The question is whether the difference in treatment is based upon some rational justification. As stated previously, due to the consolidation of all sentences required under both [the old law] and [the new law], after that consolidation it is not possible to distinguish [terms imposed under the old law] from [terms imposed under the new law]. Consequently, application of the [new] good time sentence reduction provisions serves to reduce the term an offender spends subject to the penal authority of the state. Application of those [new] provisions to offenders first sentenced prior to its effective date is impermissible, under the Constitution of this state, without Board of Pardons approval. . . . Preservation of our government's constitutional separation is a rational, if not compelling, reason for the different treatment accorded those first sentenced prior to and those first sentenced subsequent to the effective date of [the new law].

We also note that the application of the rule this second group of offenders request, that once an offender commits a crime while subject to the penal authority of the state he is automatically entitled to a more liberating good time scheme, could have the effect of encouraging the commission of crimes in order to receive the desired [new] good time provisions.

See, also, *Wounded Shield v. Gunter*, 225 Neb. 327, 405 N.W.2d 9 (1987).

The decision of the district court is affirmed.

AFFIRMED.