Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/31/2024 09:06 AM CDT

Samuel Mullins, appellant, v.
Box Butte County et al., appellees.

___ N.W.3d ___

Filed October 31, 2024.    No. S-23-636.

1. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
2. **Statutes: Legislature: Presumptions.** In enacting an amendatory statute, the Legislature is presumed to have known the preexisting law.
3. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.
4. ____: ____: ____. In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.
5. **Statutes.** To give effect to all parts of a statute, a court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.
6. ____. Basic principles of statutory interpretation generally require a court to give statutory language its plain and ordinary meaning.
7. **Statutes: Words and Phrases.** When a statutory term is a legal term of art, the term's ordinary meaning does not apply.
8. **Words and Phrases.** A legal term of art is a word or phrase having a specific, precise meaning in a given specialty apart from its general meaning in ordinary contexts.
9. **Statutes: Words and Phrases.** When legal terms of art are used in statutes, they are to be construed according to their term of art meaning.
10. **Statutes.** A statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari materia with any related statutes.

11. ____. A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.

12. **Sentences.** The first-15-day exclusion of Neb. Rev. Stat. § 47-502 (Reissue 2021) applies separately to each sentence imposed to a county jail.

13. **Legislature: Intent.** The intent of the Legislature is generally expressed by omission as well as by inclusion.

Appeal from the District Court for Box Butte County, DEREK C. WEIMER, Judge. Affirmed.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Travis R. Rodak, Deputy Box Butte County Attorney, for appellees.

Christopher L. Eickholt, of Eickholt Law, L.L.C., for amicus curiae Nebraska Criminal Defense Attorneys Association.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PER CURIAM.

## INTRODUCTION

This appeal presents one legal issue: Where an individual is sentenced to consecutive terms in a county jail, arising from separate sentences in separate cases, does the first-15-day period specified in the county jail good time statute[1] apply only at the commencement of the first sentence or at the commencement of each sentence? Because we find no ambiguity and conclude that the words "sentence," "term," and "confinement" here constitute terms of art, the statute applies separately to each sentence to the county jail. We affirm the judgment below.

---

[1] See Neb. Rev. Stat. § 47-502 (Reissue 2021) (county jail good time statute).

## BACKGROUND

*Full Text of Governing Statute.*

Because the question is driven by specific language, we quote the full text of the statute:

> Any person sentenced to or confined in a city or county jail, including any person serving a custodial sanction imposed in response to a parole or probation violation, shall, after the fifteenth day of his or her confinement, have his or her remaining term reduced one day for each day of his or her sentence or sanction during which he or she has not committed any breach of discipline or other violation of jail regulations.[2]

*County Court Criminal Sentences.*

The State charged Samuel Mullins in Box Butte County Court in two separate criminal cases, Nos. CR 23-25 and CR 23-29. At a single plea hearing, Mullins pleaded no contest in each case to a single Class I misdemeanor.

The county court held a single sentencing hearing regarding both convictions. In each case, the court imposed a sentence of 30 days in the Box Butte County jail with credit for 1 day of time served. The court ordered the sentences to be served consecutively.

As this history makes clear, Mullins was not serving a custodial sanction imposed in response to a parole or probation violation.

*District Court Declaratory Judgment Action.*

Mullins filed a complaint in the district court for Box Butte County seeking a declaratory judgment. Mullins asserted the calculation of good time was incorrect under the county jail good time statute and asked the court to issue a writ of mandamus compelling Box Butte County, the Box Butte County Sheriff, and the Box Butte County jail (collectively Box Butte County) to properly calculate good time credit.

---

[2] *Id.*

Mullins contended that for any continuous period of county jail confinement, only one first-15-day period should be excluded from earning credit for good time. Accordingly, he asserted that the proper calculation was to subtract the mandatory 15 days from the aggregate sentence of 60 days, rather than from each sentence from the two separate cases. This, he argued, is mathematically expressed as $(60 - 15) \div 2 + 15$. Mullins' calculation would result in a single sentence of 38 days—8 days less than Box Butte County's calculation.

After a stipulated bench trial, the district court concluded that because Mullins was sentenced separately for each case, the statute required Box Butte County to apply the first-15-day exclusionary period to each sentence. Accordingly, the court dismissed Mullins' complaint.

*Appeal.*

Mullins filed a timely appeal and sought to bypass review by the Nebraska Court of Appeals.[3] We granted his petition for bypass.

The Nebraska Criminal Defense Attorneys Association (NCDAA) filed a motion for leave to file an amicus brief, which we granted. We have considered its brief, along with the briefs of the parties, in our resolution of Mullins' appeal.

## ASSIGNMENTS OF ERROR

Mullins assigns, restated, that the district court erred in concluding that Box Butte County correctly calculated his total sentence with full credit for good time and denying his requested relief contrary to the requirements of the county jail good time statute.

## STANDARD OF REVIEW

[1] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[4]

---

[3] See Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 2022).

[4] *State v. Evans*, 316 Neb. 943, 7 N.W.3d 650 (2024).

ANALYSIS

The only issue is the proper interpretation of the county jail good time statute, quoted in full above. We first set forth the parties' arguments. We then recite the statutory language as it developed from its inception. After recalling principles of statutory interpretation, we apply them to the statute now before us.

*Arguments of Parties and Amicus Curiae.*

Mullins contends that the statute unambiguously requires Box Butte County to reduce his remaining aggregate "term." He points to the use of the term "confinement" and its definition: "[t]he act of imprisoning or restraining someone; the quality, state, or condition of being imprisoned or restrained."[5] Mullins reasons that because the term "confinement" is unqualified, the first-15-day exclusion only applies to the first 15 days a person is confined in a city or county jail, regardless of how many consecutive sentences the person was ordered to serve in a city or county jail. In sum, Mullins asserts that the first-15-day exclusionary period applies to a person's total period of confinement in a city or county jail.

NCDAA agrees with Mullins' position. It contends that "confinement" cannot be read to be synonymous with a "sentence" for an individual offense or a single judgment. It reasons that because the statute does not specify that "confinement" is limited to an individual case or an individual offense, the "term" is the sum of all sentences served in a city or county jail, i.e., the term of confinement. NCDAA also contends that Mullins' reading is consistent with the legislative intent of granting good time credit, which it characterizes as "to encourage positive behavior of a person while they are confined in the jail, not as a reward or gift relating to sentencing."[6]

Additionally, NCDAA points to the statutes pertaining to good time credit for persons in the custody of the Nebraska

---

[5] Black's Law Dictionary 373 (11th ed. 2019).

[6] Brief for amicus curiae NCDAA at 9.

Department of Correctional Services (DCS). Although those statutes do not provide for a first-15-day exclusionary period, NCDAA contends that the county jail good time statute should be read in pari materia with Neb. Rev. Stat. § 83-1,110 (Supp. 2023), which applies good time credit to the "'sum'" or "'aggregate'" of all sentences for persons in the custody of DCS.[7] For a "committed offender sentenced to consecutive terms, whether received at the same time or at any time during the original sentence[,] [t]he maximum terms shall be added to compute the new maximum term" for the purposes of applying good time credit.[8] Simply, for those in the custody of DCS, "'an offender's sentence, for the purpose of good time computations, [is] the sum of all sentences he receives, regardless of when incurred.'"[9] Thus, NCDAA argues that § 47-502 requires a person sentenced to jail for multiple offenses to serve a single first-15-day period before being granted good time credit for the remaining period the person will remain in jail.

For its part, Box Butte County points to the fact that Mullins was sentenced to consecutive sentences in two separate cases as support for its calculation. Box Butte County asserts that "common sense, legislative intent, and public policy would seem to dictate that convictions for separate offenses, unless ordered to be served concurrently by the Court, must have separate and independent sentencing calculations."[10]

---

[7] See *id.* at 10 (emphasis omitted). See, also, *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013); *Duff v. Clarke*, 247 Neb. 345, 526 N.W.2d 664 (1995).

[8] § 83-1,110. See 1969 Neb. Laws, ch. 817, § 41, p. 3093.

[9] *Duff v. Clarke, supra* note 7, 247 Neb. at 347, 526 N.W.2d at 666. Accord *Boston v. Black*, 215 Neb. 701, 340 N.W.2d 401 (1983). See, *Stewart v. Clarke*, 240 Neb. 397, 482 N.W.2d 248 (1992); *Luxford v. Benson*, 216 Neb. 115, 341 N.W.2d 925 (1983); *Gochenour v. Bolin*, 208 Neb. 444, 303 N.W.2d 775 (1981).

[10] Brief for appellees at 8.

*Inception and Evolution of County*
*Jail Good Time Statute.*

[2] In enacting an amendatory statute, the Legislature is presumed to have known the preexisting law.[11] We therefore look to the language of prior versions of the same statute, which led to the most recent enactment.

The Legislature first adopted the county jail good time statute in 1982. At that time, it stated:

> Any person *sentenced* to a city or county jail shall have his or her *term* reduced seven days for each twenty-one consecutive days during which he or she has not committed any breach of discipline or other violation of jail regulations and, if required to perform labor, during which he or she has faithfully performed his or her assigned duties. The reductions authorized by this section shall be granted at the end of each period of twenty-one days, with such periods to run consecutively from the date of *confinement* following sentencing.[12]

This text equated "confinement" to the "term" of a "sentence[]."[13] Because this statute applied only to "counties in which a county board of corrections" had been established,[14] the two sections of the original act were codified in chapter 23 of the Nebraska Revised Statutes, pertaining to county government and officers.[15]

In 1983, the county jail good time statute was amended only to eliminate the language regarding performance of labor.[16] In the same act, the Legislature imposed the responsibility for implementation of the county jail good time statute upon

---

[11] *Trumble v. Sarpy County Board*, 283 Neb. 486, 810 N.W.2d 732 (2012).

[12] 1982 Neb. Laws, L.B. 231, § 2 (emphasis supplied).

[13] See Neb. Rev. Stat. § 23-2811 (Cum. Supp. 1982).

[14] See Neb. Rev. Stat. § 23-2810 (Cum. Supp. 1982).

[15] See §§ 23-2810 and 23-2811 (Cum. Supp. 1982).

[16] See 1983 Neb. Laws, L.B. 180, § 5 (amending § 23-2811 (Cum. Supp. 1982)).

the sheriff of any county not having a county board of corrections.[17] Presumably because of this broader application, the county jail good time statute was transferred to chapter 47, article 5, of the Nebraska Revised Statutes.[18]

The 1983 legislation matters here, because, after the amendment, the statute continued to equate "confinement" to the "term" of a "sentence[]."[19]

In 1993, the county jail good time statute was amended to substitute "fourteen" for "twenty-one"[20]—thereby increasing the credit by reducing the period required before the credit applied. Yet again, the statute equated "confinement" to the "term" of a "sentence[]."[21]

The 1993 legislation also expressly provided for jail time credit, tying that credit to a particular sentence.[22] That language matters here because it spoke of credit against a "sentence[] to [a] jail term"[23] and required the credit to be "set forth as part of the sentence at the time such sentence is imposed."[24] The language employed in the jail credit statute reflected the Legislature's understanding of the existing language in the county jail good time statute.[25]

In 2010, the Legislature modified § 47-502 in two ways.[26] First, it implemented a 15-day waiting period before good time applied. Second, it substituted a day-for-day credit in place of the consecutive terms. Thus, after this amendment, the statute read:

---

[17] See *id.*, § 4 (amending § 23-2810 (Cum. Supp. 1982)).

[18] See § 47-502 (Supp. 1983).

[19] See *id.*

[20] See § 47-502 (Reissue 1993). See, also, 1993 Neb. Laws, L.B. 113, § 2.

[21] See § 47-502 (Reissue 1993).

[22] See 1993 Neb. Laws, L.B. 113, § 3 (codified at § 47-503 (Reissue 1993)).

[23] See § 47-503(1) (Reissue 1993).

[24] See § 47-503(2) (Reissue 1993).

[25] See §§ 47-502 and 47-503 (Reissue 1993).

[26] See 2010 Neb. Laws, L.B. 712, § 40.

Any person sentenced to a city or county jail shall, after the fifteenth day of his or her confinement, have his or her remaining term reduced one day for each day of his or her sentence during which he or she has not committed any breach of discipline or other violation of jail regulations.[27]

The jail credit statute was not amended.[28] The 2010 version of the county jail good time statute did not change the overall application of good time to the "term" of a "sentence."[29]

The final amendment to the county jail good time statute occurred in 2016, when the concept of post-release supervision joined the statutory scheme.[30] That change was necessary to make it clear that good time applied to a "custodial sanction imposed in response to a parole or probation violation."[31] This language gives no indication of any intent to remove the connection between good time and the "term" of a "sentence."

*Principles of Statutory Interpretation.*

[3-5] The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[32] In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.[33] To give effect to all parts of a statute, a court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible

---

[27] § 47-502 (Reissue 2010).

[28] See § 47-503 (Reissue 2010).

[29] See § 47-502 (Reissue 2010).

[30] See 2016 Neb. Laws, L.B. 1094, § 27.

[31] § 47-502 (Cum. Supp. 2016).

[32] *State v. Jones, ante* p. 559, 10 N.W.3d 747 (2024).

[33] *Id.*

and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.[34]

[6] Our basic principles of statutory interpretation generally require us to give statutory language its plain and ordinary meaning.[35] Thus, we have stated that statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.[36]

[7-9] But when a statutory term is a legal term of art, the term's ordinary meaning does not apply.[37] A legal term of art is a word or phrase having a specific, precise meaning in a given specialty apart from its general meaning in ordinary contexts.[38] When legal terms of art are used in statutes, they are to be construed according to their term of art meaning.[39]

[10,11] A statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari materia with any related statutes.[40] A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.[41] The fact that the parties have suggested opposite meanings does not necessarily compel the conclusion that the language is ambiguous.[42] Moreover, "'an otherwise unambiguous

---

[34] *Id.*

[35] *State ex rel. Peterson v. Creative Comm. Promotions*, 302 Neb. 606, 924 N.W.2d 664 (2019).

[36] *State v. Space*, 312 Neb. 456, 980 N.W.2d 1 (2022).

[37] See *Werner v. County of Platte*, 284 Neb. 899, 824 N.W.2d 38 (2012).

[38] *State v. Space, supra* note 36.

[39] *Id.*

[40] *State v. Albarenga*, 313 Neb. 72, 982 N.W.2d 799 (2022).

[41] *State v. McColery*, 301 Neb. 516, 919 N.W.2d 153 (2018).

[42] See *Avis Rent A Car Sys. v. McDavid*, 313 Neb. 479, 984 N.W.2d 632 (2023). See, also, 82 C.J.S. *Statutes* § 348 (2022) (fact that both sides may offer conceivable construction of statutory language is not enough to create ambiguity).

provision is not made ambiguous simply because it is difficult to apply to the facts of a particular case.'"[43]

*Application to County Jail Good Time Statute.*

The county jail good time statute requires persons sentenced to jail to serve a 15-day period of confinement before their "remaining term" is reduced with good time credit. Mullins and NCDAA urge that the statute is ambiguous because two sentences, arising from separate cases, were imposed at the same time. We disagree.

[12] The language of the county jail good time statute since 1982 has consistently and unambiguously employed terms of art equating county jail confinement to the term of a sentence. Each sentence requires its own good time credit. It necessarily follows that each sentence requires its own 15-day period before credit begins to accrue. Thus, we hold that the first-15-day exclusion of the county jail good time statute applies separately to each sentence imposed to a county jail.

For two reasons, we decline NCDAA's invitation to construe the county jail good time statute in pari materia with § 83-1,110 (which applies to those in the custody of DCS).

First, the language of the respective statutes differs in fundamental ways. The county jail good time statute contains no language comparable to that of § 83-1,110(3)(a), which applies that section to a committed offender "sentenced to consecutive terms, whether received at the same time or at any time during the original sentence." More important here, none of the statutes regulating good time in DCS contains language equivalent to the first-15-day exclusion of the county jail good time statute.

Second, practical reasons support treating state prison sentences differently from county jail sentences. There is only one DCS, serving the entire state.[44] However, Nebraska has

---

[43] *Shivvers v. American Family Ins. Co.*, 256 Neb. 159, 166, 589 N.W.2d 129, 135 (1999).

[44] See Neb. Rev. Stat. §§ 81-101, 83-171, and 83-901 (Cum. Supp. 2022).

93 counties.[45] The Legislature sought to "foster and promote local control of local affairs" and to "establish a new structure of responsibility over the county jails and correctional facilities in certain heavily populated counties and give other counties the discretion whether or not to employ such structure."[46] Moreover, unlike sentences to DCS, county jail sentences often impose very short terms—frequently 15 days or fewer. The Legislature's first-15-day exclusion operates to excuse jailers from calculating good time on such sentences.

A dissent asserts that we have "offer[ed] no reason" for the meanings ascribed to these terms of art. We disagree. We have pointed to the textual distinctions between the respective statutes. And we have imparted practical reasons for those differences.

[13] Applying the county jail good time statute separately to each sentence also enhances uniformity. The situation here involves two cases in which the same court imposes separate sentences at the same time. But it is not difficult to foresee separate sentences imposed by different courts in diverse counties during a time when an offender is already serving or about to begin a county jail sentence in yet another county. Unlike the state system, in the county corrections system, uniformity is best achieved by applying the statute separately to each sentence. The intent of the Legislature is generally expressed by omission as well as by inclusion.[47] In this regard, the Legislature's omission in the county jail good time statute of language equivalent to § 83-1,110(3)(a) emphasizes its understanding of this practical difference.

A dissent appears to conflate the preexisting statute prescribing the procedure for commitment to county jail[48] with the county jail good time statute. But the commitment statute has never addressed good time in the county jail. The

[45] See Neb. Rev. Stat. §§ 22-101 to 22-193 (Reissue 2022).

[46] See Neb. Rev. Stat. § 23-2801 (Reissue 2022).

[47] *State v. Frederick*, 291 Neb. 243, 864 N.W.2d 681 (2015).

[48] See Neb. Rev. Stat. § 29-2403 (Reissue 2016).

commitment statute changed minimally from 1873 to 1988.[49] And the change in 1988 speaks not to the issue before us but merely deletes the word "constable" and makes stylistic changes.[50]

We find no inconsistency between our reading of the county jail good time statute and the commitment statute. The commitment statute, like the county jail good time statute, equates the terms "sentence[]," "term," and "confinement." Moreover, it requires a "warrant of commitment."[51] Here, two warrants of commitment were necessary.

We do not read our decision in *Williams v. Hjorth*[52] to contemplate precise uniformity between the good time credit schemes in the state prison system and the several county jails. In that case, we characterized an intent to make the statutes "closely synonymous."[53] But there, we were primarily considering the absence of statutory language addressing time spent in county jail awaiting sentencing—a deficiency later cured by the enactment of § 47-503. Our *Williams* opinion also explained the Legislature's concern with "'serv[ing] less time for a higher crime than the people that went to the county institutions.'"[54] The Legislature, however, included the first-15-day exclusion, and omitted the § 83-1,110(3)(a) language, in the county jail good time statute. We cannot ignore the textual difference. That persuades us the Legislature intended county jail good time to differ to some degree from state prison good time regarding the first-15-day exclusion.

---

[49] See, Gen. Stat. ch. 58, § 520, p. 837 (1873); Rev. Stat. § 9190 (1913) (removing Oxford comma after "constable," changing "jailor" to "jailer," removing comma after "proper county"); Comp. Stat. § 10197 (1922); Comp. Stat. § 29-2403 (1929); Neb. Rev. Stat. § 29-2403 (1943) (making new sentence and substituting "The officer" for "who").

[50] 1988 Neb. Laws, L.B. 1030, § 27.

[51] § 29-2403.

[52] *Williams v. Hjorth*, 230 Neb. 97, 430 N.W.2d 52 (1988).

[53] *Id*. at 100, 430 N.W.2d at 54.

[54] *Id*.

We do not depend upon legislative materials such as committee reports or floor debates. We instead rely upon the statutory text as it evolved from 1982 to the present. We do not think it appropriate to scour such legislative materials to import an ambiguity not present in the statutory language.

Nor do we read two other decisions as lending support to the argument that the county good time statute is ambiguous. In a 1996 decision, we determined that the version of the county jail good time statute then in effect, as we had previously construed it, was "plain, direct, and unambiguous."[55] A 2013 decision focused on how to properly credit a defendant with time served.[56] There, we noted that different statutes addressed credit for time served based on whether the defendant is sentenced to jail or prison, and described those provisions as "similar."[57] But that decision focused on § 47-503 and not on the county jail good time statute. Thus, it provides little instruction regarding the issue presented here.

## CONCLUSION

We conclude that the county jail good time statute unambiguously contemplates that the first-15-day exclusion applies to each sentence imposing confinement to a term in county jail. The district court did not err in its statutory interpretation, and we affirm its judgment.

Affirmed.

---

[55] *State v. Atkins*, 250 Neb. 315, 320, 549 N.W.2d 159, 163 (1996).

[56] See *State v. Wills, supra* note 7.

[57] See *id*. at 264, 826 N.W.2d at 585 (comparing § 47-503 (Reissue 2010) and Neb. Rev. Stat. § 83-1,106 (Reissue 2008)).

Heavican, C.J., dissenting.

If significant work must be done to discover whether a statute is unambiguous, that statute is probably ambiguous. Because I am unpersuaded by the majority's Sisyphean attempt

to conclude that Neb. Rev. Stat. § 47-502 (Reissue 2021) unambiguously requires Mullins to serve a 15-day exclusionary period in each case, I respectfully dissent.

A statute is ambiguous if it is susceptible of more than one *reasonable* interpretation.[1] Box Butte County interprets § 47-502 to require the good time credit reduction to apply to a person's remaining *total* sentence, because a person is "*sentenced to . . .* a city or county jail"[2] by way of the judgment of the court in a single case. Alternatively, Mullins and NCDAA argue that § 47-502 requires the good time credit reduction to apply to a person's remaining *aggregate* sentence because a person serves the first 15 days "of his or her *confinement*"[3] only once. As I read § 47-502, both of these interpretations are rooted in the plain and ordinary language of the statute and neither of them are *unreasonable*.

I join the opinion of my dissenting colleague in full and would likewise resolve this appeal by applying the rule of lenity.[4] Ambiguity in a penal statute is resolved in the defendant's favor.[5]

---

[1] See *State v. McColery*, 301 Neb. 516, 919 N.W.2d 153 (2018).

[2] § 47-502 (emphasis supplied).

[3] *Id.* (emphasis supplied).

[4] See, e.g., *Bell v. United States*, 349 U.S. 81, 83, 75 S. Ct. 620, 99 L. Ed. 905 (1955) (holding it is "a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment"). See, also, *Wooden v. United States*, 595 U.S. 360, 388, 389, 142 S. Ct. 1063, 212 L. Ed. 2d 187 (2022) (Gorsuch, J., concurring) (discussing how "'rule of lenity'" is new name for old idea—"'penal laws should be construed strictly'"—and serves "distinctively American functions").

[5] See, e.g., *State v. Covey*, 290 Neb. 257, 859 N.W.2d 558 (2015); *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014); *State v. Ramirez*, 274 Neb. 873, 745 N.W.2d 214 (2008). See, also, e.g., *Albernaz v. United States*, 450 U.S. 333, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981).

Penal statutes must be strictly construed[6] and never extended by implication.[7]

However, I write separately to address the majority's conclusion that the initial statutory language and its historical development reveal that § 47-502 unambiguously employs terms of art wherein "confinement" is synonymous with "term" of a "sentence[]." In my view, insofar as the historical statutory language displays the use of a term of art, the reasonable conclusion is that a person's "term" is the period of time the person will remain in the custody of a county or city jail and is not limited to the person's total sentence in one case.

In enacting a statute, the Legislature is presumed to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.[8] Indeed, "'[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'"[9]

---

[6] E.g., *State v. Simons*, 315 Neb. 415, 996 N.W.2d 607 (2023); *State v. Godek*, 312 Neb. 1004, 981 N.W.2d 810 (2022); *Kane v. The Union Pacific Railroad*, 5 Neb. 105 (1876). See, e.g., *United States v. Morris*, 39 U.S. 464, 10 L. Ed. 543 (1840); *United States v. Wiltberger*, 18 U.S. 76, 5 L. Ed. 37 (1820).

[7] E.g., *State v. Tatreau*, 176 Neb. 381, 126 N.W.2d 157 (1964); *Weber v. State*, 122 Neb. 369, 240 N.W. 429 (1932); *Preston v. State*, 106 Neb. 848, 184 N.W. 925 (1921). See, e.g., *State v. Vanderford*, 312 Neb. 580, 980 N.W.2d 397 (2022); *State v. Hofmann*, 310 Neb. 609, 967 N.W.2d 435 (2021). See, also, e.g., *Ladner v. United States*, 358 U.S. 169, 79 S. Ct. 209, 3 L. Ed. 2d 199 (1958); *Olson v. State*, 160 Neb. 604, 71 N.W.2d 124 (1955); *Macomber v. State*, 137 Neb. 882, 291 N.W. 674 (1940); *Freadrich v. State*, 89 Neb. 343, 131 N.W. 618 (1911).

[8] *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023).

[9] *Clark v. Scheels All Sports*, 314 Neb. 49, 68, 989 N.W.2d 39, 52 (2023) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947)).

When the Legislature was seeking to expand the applicability of good time credit to those in the county and city jail system in 1982 and 1983, the then-current good time credit scheme in the state prison system had been in operation since 1969.[10] Under that statutory scheme, a court was provided the discretion to impose an indeterminate sentence upon an offender and "[f]ix the minimum and maximum *limits of the sentence*."[11] Thereafter, "[e]very person sentenced to the Division of Corrections" was "delivered into" its custody "with a copy of the sentence of the court ordering such imprisonment, there to be safely kept until the *term of his confinement* shall have expired."[12] For those "sentenced to consecutive terms, whether received at the same time or at any time during the original sentence," parole eligibility was determined by the "total of the minimum terms," while maximum terms were "added to compute [a] new maximum term" to determine mandatory release.[13]

In 1981, we held that under Neb. Rev. Stat. § 83-1,110 (Reissue 1976), for the purposes of good time, consecutive sentences must be "consolidated,"[14] and by 1983, we succinctly stated that "an offender's *sentence*, for the purpose of good time computations, [is] *the sum of all sentences* [the offender] receives, regardless of when incurred."[15] From 1969 to the present, this statement has been a correct statement of

---

[10] See, generally, 1969 Neb. Laws, ch. 817, §§ 1 to 88, pp. 3071-3113.

[11] 1969 Neb. Laws, ch. 817, § 36, p. 3090 (emphasis supplied).

[12] 1969 Neb. Laws, ch. 817, § 67, p. 3105 (emphasis supplied). See Neb. Rev. Stat. § 29-2401 (Reissue 2016).

[13] 1969 Neb. Laws, ch. 817, § 41, p. 3093 (emphasis supplied).

[14] *Gochenour v. Bolin*, 208 Neb. 444, 446, 303 N.W.2d 775, 777 (1981).

[15] *Boston v. Black*, 215 Neb. 701, 709-10, 340 N.W.2d 401, 407 (1983) (emphasis supplied). See, *Schaeffer v. Gable*, 314 Neb. 524, 991 N.W.2d 661 (2023); *Duff v. Clarke*, 247 Neb. 345, 526 N.W.2d 664 (1995); *Stewart v. Clarke*, 240 Neb. 397, 482 N.W.2d 248 (1992); *Luxford v. Benson*, 216 Neb. 115, 341 N.W.2d 925 (1983).

law for those sentenced to the state prison system.[16] Yet, the majority opinion offers no reason as to why the Legislature chose to "consistently and unambiguously" employ the same terms of art but with different meanings in the context of county and city jail good time credit.

The majority also finds importance within the Legislature's 1993 amendment requiring "[c]redit against a jail term" to be "set forth as part of the sentence at the time such sentence is imposed."[17] However, a review of the very next section of that amendatory bill shows that the language mirrors that applicable to the state prison system[18] and conforms with our then-existing precedent.[19]

Unaddressed by the majority is that since 1873, "[w]hen any person convicted of an offense shall be sentenced to imprisonment in the county jail," the person "shall remain in the jail of the proper county, until the *term of* his [or her] *confinement* shall have expired."[20] And under Neb. Rev. Stat. § 47-501 (Reissue 2021), the authority "responsible for the implementation" of good time credit is the authority in whose custody a person is confined. These sections further suggest that the "term" referred to in § 47-502 is the total period of time that the person will be in the authority's custody, the person's term of confinement.

We have consistently recognized that the same word, clause, or sentence used repeatedly in statutes pertaining to the same subject matter is presumed to have the same meaning unless the context requires otherwise and a different intention is

---

[16] See § 83-1,110 (Supp. 2023).

[17] 1993 Neb. Laws, L.B. 113, § 3.

[18] 1993 Neb. Laws, L.B. 113, § 4.

[19] See, e.g., *State v. Von Dorn*, 234 Neb. 93, 449 N.W.2d 530 (1989); *State v. Al-Hafeez*, 208 Neb. 681, 305 N.W.2d 379 (1981); *Eutzy v. State*, 199 Neb. 384, 258 N.W.2d 829 (1977). See, also, e.g., *State v. Esquivel*, 244 Neb. 308, 505 N.W.2d 736 (1993).

[20] Gen. Stat., ch. 58, § 520, p. 837 (1873) (emphasis supplied). See Neb. Rev. Stat. § 29-2403 (Reissue 2016).

shown.[21] This principle has been described by some scholars as a "presumption of consistent usage."[22] Consistency in language suggests consistency in meaning. The inverse, what some scholars have referred to as a "presumption of meaningful variation," is also true.[23] When the Legislature has departed from the consistent usage of a particular word, clause, or sentence, it suggests that the Legislature intended for the different word, clause, or sentence to have a different meaning.[24]

Based on the foregoing, I disagree with the majority's basic premise that the language of the jail good time credit statute "has consistently and unambiguously employed terms of art equating county jail confinement to the term of a sentence." Insofar as the Legislature employed "confinement" or "term" as terms of art in 1982 and 1983, it is at least equally reasonable that the Legislature meant a person's "term of confinement," meaning the sum of all sentences, regardless of when incurred. As Justice Felix Frankfurter stated, "Statutes cannot be read intelligently if the eye is closed to considerations evidenced in affiliated statutes."[25] But most importantly, in 2010, when the applicable language at issue in this appeal was enacted, both by statute and recognized by this court, "sentence," for the purposes of good time credit, equated to "term of confinement." And as the majority points out, there is no

---

[21] See, e.g., *Adair Asset Mgmt. v. Terry's Legacy*, 293 Neb. 32, 875 N.W.2d 421 (2016); *Doty v. West Gate Bank*, 292 Neb. 787, 874 N.W.2d 839 (2016); *State v. Covey, supra* note 5; *Knoell v. Huff*, 224 Neb. 90, 395 N.W.2d 749 (1986); *Edgerton v. Hamilton County*, 150 Neb. 821, 36 N.W.2d 258 (1949).

[22] See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012).

[23] William N. Eskridge, Jr., Philip P. Frickey, & Elizabeth Garrett, Cases and Materials on Legislation: Statutes and the Creation of Public Policy 834 (3d ed. 2001).

[24] See, e.g., *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020); *Schutte v. Decker*, 164 Neb. 582, 83 N.W.2d 69 (1957).

[25] Frankfurter, *supra* note 9 at 539.

indication that the Legislature intended the 2010 amendment to change the meaning of any of the words it employed.

I also note that when the Legislature amended § 47-502 and enacted the language in 2010, our precedent, which we must presume the Legislature to have known, held that we will turn to the state prison good time statutes to resolve ambiguity in the jail good time statutes because the Legislature extended good time from the prison system to the jail system "to eliminate the 'inequities'" between the two systems[26] and provide "consistent treatment for all prisoners in regard to good time credits"[27] in order "to provide a cohesive, consistent sentencing system throughout the state's detention facilities."[28] Moreover, a review of the legislative history indicates that in amending § 47-502, the Legislature explicitly intended for persons sentenced to city and county jails to be granted "equal credit"[29] at the "same rate"[30] as those in the state prison system after the first 15 days of confinement. These two reasons also compel reading § 47-502 in harmony with the good time statutes pertaining to the state prison system and to read the "term" reduced to mean the remaining sum of all sentences, whether received at the same time or at any time during the original sentence.[31]

---

[26] *Williams v. Hjorth*, 230 Neb. 97, 101, 430 N.W.2d 52, 54 (1988).

[27] *Id.* at 101, 430 N.W.2d at 55.

[28] *Id.*

[29] Floor Debate, L.B. 113, 93d Leg., 1st Sess. 377 (Feb. 2, 1993) (statement of Senator Lindsay).

[30] Floor Debate, Amend. 2491, 101st Leg., 2d Sess. 52 (Apr. 6, 2010) (statement of Senator Council).

[31] See § 83-1,110 (Supp. 2023).

PAPIK, J., dissenting.

Neb. Rev. Stat. § 47-502 (Reissue 2021) provides that a person sentenced to a city or county jail receives day-for-day good time credits but only "after the fifteenth day of his

or her confinement." This case presents the question of how that statute works when, as here, a defendant is sentenced to multiple consecutive sentences. The majority interprets the statute to provide that the defendant must serve 15 days on each sentence before good time credits start to accrue. I respectfully disagree with this analysis and write separately to explain why.

The statutory language at issue provides that after the 15th day of the defendant's "confinement," the "remaining term" of the defendant's "sentence" is reduced day-for-day, so long as the defendant does not violate jail regulations or otherwise misbehave. The majority concludes that this language unambiguously provides that good time credits will not kick in until a defendant has served 15 days on each sentence. It finds the statute clearly provides as much based on a determination that the statute employs "terms of art equating county jail confinement to the term of a sentence." While I will concede that may be a reasonable interpretation of the statute, I disagree it is the only one.

As the majority notes, a legal term of art is a word or phrase having a specific, precise meaning in a given specialty apart from its general meaning in ordinary contexts. *State v. Space*, 312 Neb. 456, 980 N.W.2d 1 (2022). I am not persuaded, however, that "term," "sentence," and "confinement," as they appear in § 47-502, can only reasonably be understood as carrying a specific, precise meaning, rather than their general ordinary meaning.

Moreover, if the various terms in § 47-502 are given their general, ordinary meaning, I believe the statute could reasonably be interpreted to provide that a defendant earns good time credits on any sentences ordered to be served consecutively once he or she has served one 15-day period of confinement. The statute directs that a defendant should receive good time credits on the "remaining term" of "his or her sentence" after 15 days of "confinement." The statute does not specify whether that "confinement" is restricted to a particular sentence, and it

also does not specify whether that "remaining term" is the time the defendant must serve on an individual conviction or the total time the defendant must serve.

The statute does refer to "sentence" and "term" in the singular, rather than the plural. However, a canon of statutory interpretation, sometimes referred to as the "number canon," counsels against placing too much significance on a statute's use of singular or plural terms. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 129 (2012). That canon provides that in the absence of some contrary indication, "the singular includes the plural (and vice versa)." *Id.* Not only is this canon well-established, see *id.*, in Nebraska, the Legislature has codified it. The Legislature has directed that "[u]nless such construction would be inconsistent with the manifest intent of the Legislature," "[s]ingular words may extend and be applied to several persons or things as well as to one person or thing." Neb. Rev. Stat. § 49-802 (Reissue 2021). Given this canon, and especially in light of its codification, I do not believe we can draw much significance from the use of the singular "term" and "sentence."

Given the number canon and the statute's silence on whether "confinement" is restricted to a particular sentence and whether the "remaining term" is the time the defendant must serve on an individual conviction or the total time the defendant must serve, I think that one could reasonably read the statute to provide that once a defendant has been confined for 15 days, he or she receives good time credit on any remaining sentence he or she has been ordered to serve.

Because I believe the statute can reasonably be interpreted in the way Mullins urges, I, unlike the majority, do not believe the statute is unambiguous. See *Dirt Road Development v. Hirschman*, 316 Neb. 757, 7 N.W.3d 438 (2024) (statute is ambiguous if susceptible of more than one reasonable interpretation). And, in this case at least, I believe a determination that the statute is ambiguous resolves the matter. The rule of lenity requires a court to resolve ambiguities in penal statutes

in the defendant's favor. See, e.g., *State v. Ramirez*, 274 Neb. 873, 745 N.W.2d 214 (2008). The rule of lenity is commonly applied to sentencing statutes. See, e.g., *State v. Hess*, 983 N.W.2d 279 (Iowa 2022). Application of the rule of lenity here would require us to resolve any ambiguities in Mullins' favor and find that defendants start to earn good time credits after serving a single 15-day period. Because the majority concludes otherwise, I respectfully dissent.

Heavican, C.J., and Stacy, J., join in this dissent.