Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/23/2025 09:09 AM CDT

BRYAN HAUXWELL AND AMI HAUXWELL, APPELLANTS,
v. MIDDLE REPUBLICAN NATURAL RESOURCES
DISTRICT ET AL., APPELLEES.

___ N.W.3d ___

Filed May 23, 2025.    No. S-23-791.

1. **Motions to Dismiss: Appeal and Error.** Appellate review of an order granting a motion to dismiss is de novo.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.
3. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
4. **Judgments: Appeal and Error.** When the record demonstrates that the decision of the trial court is correct, although such correctness is based on different grounds from those assigned by the trial court, an appellate court will affirm.
5. **Appeal and Error.** In Nebraska, the right to appeal is purely statutory in that the right to appeal does not exist unless a statute provides for an appeal.
6. **Jurisdiction: Statutes: Appeal and Error.** The requirements of a statute underlying a right to appeal are mandatory and must be complied with before the appellate court acquires jurisdiction over the subject matter of the action.
7. **Statutes: Words and Phrases.** The word "include," as used in a statute, connotes that the provided list of components is not exhaustive and that there are other items includable that are not specifically enumerated.
8. **Words and Phrases.** A legal term of art is a word or phrase having a specific, precise meaning in a given specialty apart from its general meaning in ordinary contexts.
9. **Statutes: Words and Phrases.** When legal terms of art are used in statutes, they are to be construed according to their term of art meaning.

10. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

11. **Jurisdiction: Appeal and Error.** If the district court, sitting as an intermediate appellate court, lacked jurisdiction over a party's appeal, a higher appellate court also lacks jurisdiction to decide the merits of the appeal.

Appeal from the District Court for Frontier County: JAMES E. DOYLE IV, Judge. Affirmed.

George G. Vinton for appellants.

Donald G. Blankenau and Kennon G. Meyer, of Blankenau, Wilmoth & Jarecke, L.L.P., for appellees.

FUNKE, C.J., MILLER-LERMAN, CASSEL, STACY, PAPIK, and FREUDENBERG, JJ.

FUNKE, C.J.

## INTRODUCTION

The Nebraska Ground Water Management and Protection Act (NGWMPA) allows a person aggrieved by an order of a natural resources district issued under the NGWMPA to appeal the order.[1] The question before us is whether a letter denying an application to pool ground water from several registered wells, coupled with a copy of that application that was marked as "[d]enied," is an order of a natural resources district under the NGWMPA. Because the relevant letter, with the accompanying application, is not an "order" as that term is defined in the NGWMPA, we affirm the order of the district court dismissing the appellants' petition for review.

## BACKGROUND

### FACTUAL BACKGROUND

The appellants, Bryan Hauxwell and Ami Hauxwell, are farmers who use ground water and surface water to

---

[1] See Neb. Rev. Stat. §§ 46-701 to 46-756 (Reissue 2021).

irrigate properties located within the Middle Republican Natural Resources District. Since 2020, the Hauxwells have been involved in litigation with the Middle Republican Natural Resources District, its chairperson, and its general manager (collectively NRD) about the Hauxwells' irrigation practices and the NRD's response to those practices.[2]

## HAUXWELLS' REQUEST TO POOL
## GROUND WATER DENIED

While this litigation was ongoing, the Hauxwells submitted a "request to pool the use of ground water" from several registered wells for the 2023 to 2027 allocation period. Several weeks later, the Hauxwells received a letter stating that their application was denied. As the apparent basis for denial, the letter cited NRD rule "6-1.12." This rule, which is not otherwise reflected in the record on appeal, is quoted in the letter as stating that the NRD may deny a pooling application "for any reason, including but not limited to, violations of the [d]istrict's [r]ules, [r]egulations, or controls." The letter invited the Hauxwells to contact the NRD if they had questions. Attached to the letter was the first page of the Hauxwells' application, which was marked as "[d]enied" in a box labeled "[f]or [d]istrict use only." We hereinafter refer to the letter and the attached application collectively as "the letter."

The letter was seemingly sent after a meeting of the NRD board of directors at which the board voted to deny the Hauxwells' application. The Hauxwells also allegedly spoke with the NRD's general manager after receiving the letter and were informed that the application was denied due to "'pending litigation.'" However, the information about the board meeting and the Hauxwells' conversation with the general manager comes solely from the parties' pleadings and other filings. There is no evidence of the meeting or the conversation in the record on appeal.

---

[2] See *Hauxwell v. Middle Republican NRD, ante* p. 1, ___ N.W.3d ___ (2025).

### Hauxwells' Petition for Review

The Hauxwells filed a "Petition for Review" with the district court for Frontier County, Nebraska, under the NGWMPA and the Administrative Procedure Act (APA),[3] challenging the denial of their pooling application. In the petition, the Hauxwells alleged that the denial of their application violated their constitutional rights and was arbitrary and capricious. The Hauxwells also alleged that the denial was contrary to a court order in another case staying penalties that the NRD had imposed on the Hauxwells. One of those penalties was that the Hauxwells "shall not receive the benefit of any pooling agreements." The Hauxwells asked the court to reverse the denial of their pooling application and to order that the application be granted. The Hauxwells also sought attorney fees under Neb. Rev. Stat. § 25-1803 (Reissue 2016) on the ground that the NRD's position was not substantially justified.

### NRD's Motion to Dismiss

The NRD moved to dismiss the Hauxwells' petition for lack of jurisdiction and failure to state a claim upon which relief may be granted. The NRD argued that the letter denying the Hauxwells' pooling application was not "entitled to judicial review under the APA," because the letter was not a "final agency action or an order of the [natural resources district] in a contested case." The NRD based this argument on the APA's definition of a "[c]ontested case" as a proceeding before an agency wherein the parties' legal rights, duties, or privileges are required by law or constitutional right to be determined after a hearing.[4] The NRD argued that no agency adjudicatory hearing was required or held in this case. Instead, the NRD argued that the Hauxwells' petition for review "simply . . . reimagin[ed]" an earlier lawsuit between the same parties that was dismissed, in part, on sovereign immunity grounds.

---

[3] Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2014 & Cum. Supp. 2022).

[4] See § 84-901(3).

The NRD claimed that sovereign immunity similarly barred the present petition. The NRD also sought attorney fees under Neb. Rev. Stat. § 25-824 (Reissue 2016) on the ground that the Hauxwells' claims were frivolous.

### Hauxwells' Response to Motion to Dismiss

The Hauxwells filed a response to the NRD's motion to dismiss, contesting, among other things, the NRD's claim that the petition was "not entitled to judicial review under the APA." Primarily, the Hauxwells argued that the NRD "conflate[d] 'contested case'" as defined in the APA with an appeal under § 46-750 of the NGWMPA. The Hauxwells argued that natural resources districts are not "agencies" under the APA and, thus, are not subject to the APA's provisions regarding contested cases. Instead, the Hauxwells argued that § 46-750 permits any person aggrieved by any order of a natural resources district to appeal the order. The Hauxwells argued that the denial of their pooling application was an "order" of a natural resources district for purposes of § 46-750. Relatedly, the Hauxwells argued that nothing in § 46-750 states that the order appealed from must be the result of an adjudicatory hearing.

### Hauxwells' Motions to Stay Denial of Pooling Application, Supplement Record, and Disqualify NRD's Counsel

In their response to the NRD's motion to dismiss, the Hauxwells moved to stay the denial of their pooling application. The Hauxwells also sought to supplement the record on the ground that their application was denied without a hearing and without "making any kind of a record." In addition, the Hauxwells sought to disqualify the NRD's counsel from the present proceeding because he had served as the hearing officer at an earlier hearing where the Hauxwells were found to have violated the NRD's rules and regulations.

Ami's Affidavit Filed

Contemporaneously with their response to the motion to dismiss and the motions described above, the Hauxwells filed an affidavit by Ami, recounting what she viewed as the relevant circumstances surrounding the denial of the pooling application. Attached to the affidavit were several exhibits, including the court order staying the penalties the NRD had imposed against the Hauxwells. The Hauxwells subsequently sought to introduce the affidavit into evidence at the hearing on the motion to dismiss, but the district court declined to admit it, as discussed below.

Briefing and Hearing Before District Court

Thereafter, in briefing and at a hearing before the district court, the NRD argued that the court lacked jurisdiction because the letter denying the Hauxwells' pooling application did not arise from a contested case, and "only decisions made through a contested case" may be appealed under § 84-917(1) of the APA. Relatedly, the NRD argued that there was no requirement for an adjudicatory hearing regarding a pooling application and that "[b]ecause there was no hearing, there [was] no record from which an appeal may be conducted." The NRD argued that the Hauxwells' petition "must be dismissed" on this basis alone. However, the NRD also argued that a pooling agreement was not a "'protected entitlement'" and could be granted or denied by government officials in their discretion. As to Ami's affidavit, the NRD argued that it should not be admitted into evidence because the APA limits the court's review to the record of the agency.[5]

The Hauxwells, in turn, argued that "any hearings by [a natural resources district] are not 'contested cases' as defined in the APA." The Hauxwells acknowledged that the NGWMPA calls for an appeal of an order of a natural resources district to be "taken in accordance with the APA." However, the

---

[5] See § 84-917(5)(a).

Hauxwells argued that this does not mean that the APA's provisions requiring a "final decision in a contested case" apply to appeals under the NGWMPA, given the NGWMPA's broad reference to "any order" of a natural resources district. The Hauxwells also pointed to NRD rules and regulations that they claimed "entitle[d] a farmer to pool," as well as the "economic damage" they allegedly sustained from the "denial of pooling," with the apparent implication that this showed a protected entitlement. As to Ami's affidavit, the Hauxwells argued that it was admissible because it was offered only in connection with the motion to dismiss. The district court took matters under advisement.

After the hearing, and while the court's decision was pending, the NRD filed a notice of supplemental authority, citing *Dodge Cty. Humane Soc. v. City of Fremont*[6] as further proof that certain actions by government officials are not judicial in nature. The Hauxwells countered that *Dodge Cty. Humane Soc.* did not involve an appeal under the NGWMPA. The Hauxwells also argued that Ami's affidavit was admissible under *Prokop v. Lower Loup NRD*[7] as evidence of "procedural irregularities" denying them due process.

## District Court's Order

The district court dismissed the Hauxwells' petition for "fail[ure] to state a basis for appeal." The court found that no contested case was involved because no hearing was held regarding the Hauxwells' pooling application. Instead, the court found that the NRD board considered the application at a "[r]egular business meeting[]."

Relying on *Dodge Cty. Humane Soc.*, the court found there was no indication that the board acted in a "quasi-judicial manner" in denying the pooling application. The court similarly concluded that the letter denying the Hauxwells' pooling

---

[6] *Dodge Cty. Humane Soc. v. City of Fremont*, 314 Neb. 714, 992 N.W.2d 747 (2023).

[7] *Prokop v. Lower Loup NRD*, 302 Neb. 10, 921 N.W.2d 375 (2019).

application was not a "'record' of the board's action on the application," but, rather, "the general manager's apparent action in response to the board's action." As such, the court reasoned that "[w]ithout a final order of the decision-making body and without a record of the action taken by the decision-making body, no basis for review has been stated."

The district court declined to admit Ami's affidavit and overruled the Hauxwells' motion to supplement the record. The Hauxwells' motions to disqualify the NRD's counsel and to stay the denial of their pooling application were also overruled, as were both parties' motions for attorney fees.

The Hauxwells timely appealed, and we moved the matter to our docket.[8]

## ASSIGNMENTS OF ERROR

The Hauxwells assign, restated and consolidated, that the district court erred in (1) granting the NRD's motion to dismiss their petition for review and failing to find that the letter denying their pooling application was an order subject to appeal under the NGWMPA, (2) sustaining the NRD's objection to Ami's affidavit, and (3) failing to grant their motions to supplement the record, to disqualify the NRD's counsel, and for attorney fees.

## STANDARD OF REVIEW

Both the Hauxwells and the NRD point to the following standard of review: A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[9] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is

---

[8] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[9] *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*, 315 Neb. 596, 998 N.W.2d 41 (2023).

supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[10]

[1-3] This, however, is an appeal from an order sustaining a motion to dismiss based on lack of jurisdiction. Appellate review of an order granting a motion to dismiss is de novo.[11] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[12] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[13]

## ANALYSIS

We begin with the Hauxwells' arguments regarding the NGWMPA because we find them to be dispositive. Insofar as it found that the letter denying the Hauxwells' pooling application did not arise from a contested case, the district court essentially found that it lacked jurisdiction over the present matter.[14] The Hauxwells claim that the district court erred in so finding because the letter was an order subject to appeal under the NGWMPA.

[4] Ultimately, for the reasons set forth below, we agree with the district court that jurisdiction is lacking, although we base that conclusion on somewhat different grounds than those set forth by the district court. When the record demonstrates that the decision of the trial court is correct, although

---

[10] *Id.*

[11] *In re Application A-19594*, 315 Neb. 311, 995 N.W.2d 655 (2023).

[12] *Dodge Cty. Humane Soc., supra* note 6.

[13] *Mullins v. Box Butte County*, 317 Neb. 937, 13 N.W.3d 67 (2024).

[14] See, e.g., *Purdie v. Nebraska Dept. of Corr. Servs.*, 292 Neb. 524, 872 N.W.2d 895 (2016); *Kaplan v. McClurg*, 271 Neb. 101, 710 N.W.2d 96 (2006); *Charity Field Farms v. Board of Ed. Lands & Funds*, 27 Neb. App. 276, 930 N.W.2d 581 (2019); *Kerr v. Board of Regents*, 15 Neb. App. 907, 739 N.W.2d 224 (2007).

such correctness is based on different grounds from those assigned by the trial court, an appellate court will affirm.[15]

## Legal Framework

[5,6] As we have previously explained, in Nebraska, the right to appeal is purely statutory in that the right does not exist unless a statute provides for an appeal.[16] In other words, the requirements of a statute underlying a right to appeal are mandatory and must be complied with before the appellate court acquires jurisdiction over the subject matter of the action.[17]

For example, in *Purdie v. Nebraska Dept. of Corr. Servs.*,[18] we found that the courts lacked jurisdiction over an inmate's challenge to his level of custody because the agency's decision regarding his custody level was not made in a "contested case" as defined in the APA. In so doing, we held that by statute, the presence of a "contested case" is a predicate to jurisdiction in a case under § 84-917 of the APA.[19]

More recently, in *Dodge Cty. Humane Soc.*, we found that the courts lacked jurisdiction over a petition in error challenging a city's decision to terminate the petitioner's contract.[20] We did so because the petition in error statute requires that the challenged judgment or order be made by an entity "'exercising judicial functions.'"[21] However, we found that the city council was not exercising judicial functions when it approved the letter terminating the petitioner's contract.[22]

---

[15] *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022).

[16] *Swicord v. Police Stds. Adv. Council*, 314 Neb. 816, 993 N.W.2d 327 (2023).

[17] *Id.*

[18] *Purdie, supra* note 14.

[19] See *id.*

[20] *Dodge Cty. Humane Soc., supra* note 6.

[21] *Id.* at 719, 992 N.W.2d at 752 (emphasis omitted).

[22] *Dodge Cty. Humane Soc., supra* note 6.

In the present case, two different acts are cited in reference to jurisdiction over the Hauxwells' appeal. One of those acts is the APA. The APA entitles "[a]ny person aggrieved by a final decision in a contested case" to judicial review under the act.[23] The APA defines a "[c]ontested case" to mean "a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing."[24] The term "[a]gency" is further defined in the APA to mean "each board, commission, department, officer, division, or other administrative office or unit of the state government authorized by law to make rules and regulations," with certain exceptions.[25] Based on the latter definition, in particular, we have held that natural resources districts are not "agencies" under the APA.[26]

The other relevant act is the NGWMPA. The NGWMPA authorizes "[a]ny person aggrieved by any order" of a "district" issued pursuant to the NGWMPA to "appeal the order. The appeal shall be in accordance with the [APA]."[27] The NGWMPA defines a "[d]istrict" to mean "a natural resources district operating pursuant to Chapter 2, article 32 [of the Nebraska Revised Statutes]."[28] The NGWMPA also defines the term "[o]rder," "except as otherwise specifically provided," to "include[] any order required by the [NGWMPA], by rule or regulation, or by a decision adopted by a district by vote of the board of directors of the district taken at any regularly scheduled or specially scheduled meeting of the board."[29]

---

[23] § 84-917(1).

[24] § 84-901(3).

[25] § 84-901(1).

[26] See *Lingenfelter v. Lower Elkhorn NRD*, 294 Neb. 46, 73, 881 N.W.2d 892, 912 (2016).

[27] § 46-750. See, also, *Medicine Creek v. Middle Republican NRD*, 296 Neb. 1, 892 N.W.2d 74 (2017).

[28] § 46-706(4).

[29] § 46-706(26).

Parties' Arguments

Although the Hauxwells initially based their petition for review partly on the authority of the APA, on appeal, they do not appear to dispute that the letter was not issued in a "contested case" as defined in the APA. Instead, the Hauxwells argue that the letter was appealable under § 46-750 of the NGWMPA.

In particular, as relevant here, the Hauxwells argue that the letter was an "order" of the NRD as defined in § 46-706(26) of the NGWMPA. The Hauxwells point to another section of the NGWMPA and several NRD rules and regulations, with the apparent implication that these authorities "required" the issuance of the letter. They also observe that the decision to deny their pooling application was "made at a regular board meeting."[30] In addition, the Hauxwells argue that nothing in § 46-750 or § 46-706(26) states that an order must arise from an adjudicatory hearing. The Hauxwells similarly argue that the APA's "contested case" requirement does not apply to appeals under § 46-750, even if those proceedings are otherwise required to be in accordance with the APA.

The NRD, on the other hand, argues that for the NGWMPA to operate "within Nebraska's [c]onstitutional separation of powers and principles of justiciability," the statute must be construed to permit only appeals that arise from "contested case proceeding[s] in which the [NRD] was acting in an adjudicatory or quasi-judicial capacity."[31] The NRD points to several opinions of this court, which the NRD claims prove that for an appeal to be justiciable, "it must emerge from a contested case required by statute or constitution."[32] The

---

[30] Brief for appellants at 24.

[31] Brief for appellees at 15.

[32] *Id*. at 16. See, also, *Dodge Cty. Humane Soc., supra* note 6; *Champion v. Hall County*, 309 Neb. 55, 958 N.W.2d 396 (2021); *Hawkins v. City of Omaha*, 261 Neb. 943, 627 N.W.2d 118 (2001); *Stoneman v. United Neb. Bank*, 254 Neb. 477, 577 N.W.2d 271 (1998); *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994); *Charity Field Farms, supra* note 14; *Kerr, supra* note 14.

NRD argues that § 46-750 "mirror[s] this foundational principle" by requiring appeals to proceed under the APA.[33] In other words, the NRD suggests that § 46-750's requirement that appeals proceed under the APA effectively incorporates the provisions in § 84-917(1) of the APA requiring a final decision in a contested case.

### Letter Is Not Order Under NGWMPA

Even assuming that the Hauxwells are aggrieved and that the other requirements of § 46-750 are met, the letter here cannot be seen as an order under the NGWMPA. In so concluding, we observe that the definition of "order" currently set forth in § 46-706(26) of the NGWMPA is not as clear as might be desired, perhaps due to its origins. That definition was added to the NGWMPA in 2004,[34] as part of a bill that "implement[ed] the changes in Nebraska's water policy that were recommended by the Water Policy Task Force."[35] One of those changes was a definition of the term "order" that does not state what the term "order" "is" or "means."[36] Rather, it states that the term "includes" certain specified orders.[37]

[7] As we have previously explained, the word "include," as used in a statute, connotes that the provided list of components is not exhaustive and that there are other items includable that are not specifically enumerated.[38] Consistent with that principle, the definition of "order" in § 46-706(26)

---

[33] Brief for appellees at 17.

[34] See 2004 Neb. Laws, L.B. 962, § 46.

[35] See Introducer's Statement of Intent, L.B. 962, Natural Resources Committee, 98th Leg., 2d Sess. (Jan. 21, 2004). See, also, Committee Statement, L.B. 962, Natural Resources Committee, 98th Leg., 2d Sess. (Jan 21, 2004).

[36] See Nebraska Water Policy Task Force, Report of the Nebraska Water Policy Task Force to the 2003 Nebraska Legislature, https://govdocs.nebraska.gov/epubs/N1500/B003-2003.pdf (last visited May 14, 2025).

[37] Id.

[38] E.g., *State v. Knight*, 311 Neb. 485, 973 N.W.2d 356 (2022).

requires us to consider what orders, beyond those specifically enumerated in that subsection, constitute orders for purposes of § 46-706(26).

[8,9] Here, we must acknowledge the fact that generally, the term "order" is a legal term of art. A legal term of art is a word or phrase having a specific, precise meaning in a given specialty apart from its general meaning in ordinary contexts.[39] When legal terms of art are used in statutes, they are to be construed according to their term of art meaning.[40] As relevant here, the meaning of "order" as a term of art is "'the mandate or determination of the court upon some subsidiary or collateral matter . . . not disposing of the merits, but adjudicating a preliminary point or directing some step in the proceedings.'"[41] This is essentially the same definition that the Nebraska Legislature has given to the term for purposes of courts and civil procedure.[42] Notably, the term "order" is used in contradistinction to the term "judgment."[43] "[J]udgment" denotes "[a] court's final determination of the rights and obligations of the parties in a case."[44]

Our review of the NGWMPA suggests that "order" is not always used as a term of art in that act. For example, § 46-712 of the NGWMPA calls for natural resources districts contemplating the establishment of a ground water management area to conduct a public hearing and then issue an order either determining that no management area shall be

---

[39] *Mullins, supra* note 13.

[40] *Id.*

[41] Black's Law Dictionary 1270 (10th ed. 2014) (quoting 1 Henry Campbell Black, A Treatise on the Law of Judgments § 1 (2d ed. 1902)).

[42] See Neb. Rev. Stat. § 25-914 (Reissue 2016) ("[e]very direction of a court or judge, made or entered in writing and not included in a judgment, is an order").

[43] See Black's Law Dictionary, *supra* note 41 at 970, 1270.

[44] *Id.* at 970. See, also, Neb. Rev. Stat. § 25-1301(1) (Cum. Supp. 2024) ("[a] judgment is the final determination of the rights of the parties in an action").

established or designating the area as a management area and adopting authorized controls.[45] We presume that it is "orders," such as this, that the Nebraska Water Policy Task Force and the Legislature had in mind when they specified in § 46-706(26) that "[o]rder, except as otherwise specifically provided, includes any order . . ." required by the NGWMPA, a rule or regulation, or a decision adopted by the board of directors of a natural resources district. However, because the term "includes" is not exhaustive, we cannot construe the term "order" in § 46-706(26) to include only the orders listed. Instead, we must construe it to encompass either an order in the term-of-art sense or an order specifically enumerated within the statutory definition. In other words, as this case illustrates, not every decision or action of a natural resources district is an order subject to appeal.

Here, the letter upon which the Hauxwells rely is not an order in either sense of the term. The letter was not issued as part of any case or proceeding to which the Hauxwells and the NRD were parties. The board did not receive evidence or testimony into an official record or render a decision in an adversarial proceeding consistent with due process when it voted to deny the Hauxwells' pooling application. Instead, the board merely took a vote regarding an application for pooling, a vote that apparently prompted the general manager to send the letter in question to the Hauxwells. In other words, the situation here is analogous to that in *Dodge Cty. Humane Soc.*, even if that case involved a different statutory framework.[46] The Hauxwells are correct that the statute at issue in *Dodge Cty. Humane Soc.* expressly refers to an entity exercising "judicial functions,"[47] while § 46-750 does not. However,

---

[45] See, also, §§ 46-718(1) and (2), 46-719(2)(b) and (c), 46-724 through 46-726(2) and (3), 46-728(2), and 46-739.

[46] See *Dodge Cty. Humane Soc., supra* note 6.

[47] See Neb. Rev. Stat. § 25-1901 (Reissue 2016).

when used as a term of art, the term "order" itself implies judicial functions, as explained above.[48]

The letter also cannot be seen to be among the orders specified as "include[d]" within the definition of "order" in § 46-706(26). As quoted above, § 46-706(26) expressly includes orders "required" by the NGWMPA, a rule or regulation, or a decision adopted by the board of directors of a natural resources district. However, the Hauxwells do not point to any authority that required the purported order in this case. The statute cited by the Hauxwells, § 46-707(1)(a), says only that a natural resources district "may . . . [a]dopt and promulgate rules and regulations." The rules and regulations referenced by the Hauxwells similarly state only that pooling is allowable but may be denied for violating the NRD's rules and regulations. The Hauxwells say nothing about the content of the board's decision; they merely observe that such decision was adopted at a scheduled board meeting.

[10] When pressed at oral arguments about what required the purported order here, the Hauxwells pointed to the word "aggrieved" in § 46-750, with the apparent implication that the letter is an "order" because they are allegedly aggrieved by it. We decline to adopt such an approach. To do so would effectively read the word "required" out of § 46-706(26) and instead allow appeals under the NGWMPA whenever persons claim to be aggrieved by orders issued pursuant to the act. It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[49]

We are cognizant of the Hauxwells' argument that "not all the [NRD] pooling rules and regulations" are part of the

---

[48] Cf., *Medicine Creek, supra* note 27; *Central Neb. Pub. Power Dist. v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010).

[49] *State v. Jones*, 317 Neb. 559, 10 N.W.3d 747 (2024).

record in the present case.[50] That is true, and the absence of an allegedly relevant NRD regulation from the record could pose difficulties in a future case. However, we leave that question for an appropriate future case because the Hauxwells do not cite any rule or regulation not in evidence here that they claim required the letter. We note that nothing in this opinion should be read to determine that the denial of a pooling application can never be subject to appeal. Rather, our conclusion is based on the facts and circumstances surrounding the specific denial in this case.

[11] Because the letter in question is not an "order" as defined in the NGWMPA, the district court lacked jurisdiction over the Hauxwells' appeal. This means that we, too, lack jurisdiction. If the district court, sitting as an intermediate appellate court, lacked jurisdiction over a party's appeal, a higher appellate court also lacks jurisdiction to decide the merits of the appeal.[51] Therefore, we do not reach the merits of the Hauxwells' arguments regarding the exclusion of Ami's affidavit and the denial of their motions to supplement the record, to disqualify the NRD's counsel, and for attorney fees.

## CONCLUSION

Because the denial of the Hauxwells' pooling application was not an "order" as defined in the NGWMPA, both the district court and this court lack jurisdiction over their petition for review. Accordingly, we affirm the order of the district court dismissing the Hauxwells' petition for review.

Affirmed.

---

[50] Brief for appellants at 25.

[51] *Johnson v. Vosberg*, 316 Neb. 658, 6 N.W.3d 216 (2024).